1998-NMCA-167

970 P.2d 149

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Fernando HERNANDEZ, Defendant–Appellant.**

**No. 18,300.**

Court of Appeals of New Mexico.

Aug. 13, 1998.

Certiorari Denied, No. 25,418, Nov. 13, 1998.

Tom Udall, Attorney General, Ann Harvey, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

## OPINION

ARMIJO, Judge.

{1} Defendant was convicted of escape from the penitentiary, possession of a deadly weapon by a prisoner, felon in possession of a firearm, and two counts of attempted first degree murder. On appeal, Defendant challenges the trial court's denial of his motion for a change of venue and the sufficiency of the evidence to support his convictions on the two counts of attempted first degree murder. Because we determine that the evidence was not sufficient to support the attempted first degree murder convictions, we reverse those convictions and remand for a new trial on two counts of attempted second degree murder. Because the trial court did not abuse its discretion in denying the motion for a change of venue, we affirm Defendant's remaining convictions for escape from the penitentiary, possession of a deadly weapon by a prisoner, and felon in possession of a firearm.

## I. BACKGROUND

{2} On November 2, 1995, Defendant was an inmate at the state penitentiary. On that date, he attempted to escape from custody while he was in the Otero County courthouse for a hearing. Sergeant Ernie Granados (Granados), a detention officer at the Otero County jail, escorted Defendant from the jail to the courthouse and waited with him in a second-floor hallway during a brief recess. Defendant was dressed in an orange jumpsuit and was restrained with handcuffs and leg irons. While Granados talked briefly

with the tape monitor, he saw from the corner of his eye a flash of orange moving toward the stairs. Defendant was free of his restraints and was headed downstairs.

{3} Granados pursued Defendant and tackled him on the third step of the stairway. They fell to the landing. Granados grabbed Defendant's legs as he stood up, and they fell down the rest of the steps to the lobby. As Defendant got up again, he grabbed Granados' gun and holster which were attached to Granados' belt. Granados tried to secure Defendant and the gun simultaneously.

{4} Tony Rogers (Rogers), a building and grounds superintendent, and Ron Whitely (Whitely), a chief probation officer, were talking in the lobby when the struggle between Defendant and Granados ensued. They ran to help Granados. While Defendant held the gun with his finger on the trigger and Granados grabbed Defendant's hand, Defendant pointed the gun and fired a shot toward Rogers and Whitely as they approached from the lobby.

{5} Rogers testified that the gun went off right beside his head, and that he feared for his life. Granados saw Rogers dancing around the barrel of the gun to escape the line of fire. Whitely first thought that Rogers had been hit, and reacted by grabbing the gun. While grabbing the gun, Whitely could feel the cylinder trying to turn. He heard Granados saying over and over, "don't do it, Fernie." He remembered Defendant saying, "I'll kill you."

{6} While Whitely was grabbing the barrel of the gun, Granados had his hand over the hammer, and could see the hammer moving as though Defendant were pulling the trigger back to fire the gun. Granados testified that the gun was pointed in several directions during the struggle. Defendant might have pointed the gun at Granados at one time, while at another time it was pointed at Rogers. Granados thought that Defendant was going to shoot him.

{7} As Defendant struggled with Whitely and Granados, he continued to move through the lobby to the outside doors of the courthouse while shouting "I'm going to shoot you, I'm going to shoot you again."

Granados kept telling Defendant not to do it. After they exited through the doors, Detective Ted Eldridge (Eldridge) of the Otero County Sheriff's office joined the struggle and grabbed the gun. Eldridge put his left hand over the cylinder of the gun to keep it from firing. He felt the cylinder attempting to rotate two or three times.

{8} Whiteley let go of the gun after Eldridge had a firm grip. Rogers removed Defendant's finger from the trigger after Eldridge had control of the gun. Eldridge pulled the gun from Defendant's hand. Another detective grabbed Defendant's legs and took him down. Granados later estimated that the entire incident lasted no longer than four minutes.

{9} Eldridge, who is a certified firearms instructor, later examined the gun and holster which Defendant had grabbed from Granados during the incident. Eldridge noted that the gun was in an unsafe condition because it was out of time, leaving more slack than normal in the cylinder. He also noted that the holster was not made for the gun. For this reason, the gun could become cocked while still in the holster. However, Eldridge testified that despite the condition of the gun and holster, the gun was still capable of firing a bullet the day of the incident, and someone would have to pull the trigger to fire the gun even if it was cocked.

## II. DISCUSSION

### A. *Sufficiency of Evidence of Attempted Murder*

{10} On appeal, Defendant claims that no evidence was presented at trial to show the deliberate intention to take away the life of another that is required to support his convictions for the attempted first degree murder of Granados and Rogers. The Uniform Jury Instruction for willful and deliberate murder, which the trial court correctly applied in this case, defines this deliberate intention as follows:

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or deter-

mined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

UJI 14-201 NMRA 1998; *cf.* UJI 14-2801 NMRA 1998 n. 1 (essential elements of attempt to commit a felony include elements of the underlying felony).

**▇▇▇▇** {11} Defendant contends that we must review the evidence under the standard articulated in *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). We agree, although it must be recognized that *Garcia* did not change the previously established standard. *See State v. Apodaca,* 118 N.M. 762, 766, 887 P.2d 756, 760 (1994); *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). Thus, we review the evidence of either a direct or circumstantial nature to determine whether it is sufficient to support a verdict of guilt beyond a reasonable doubt with respect to the element of deliberate intent required for Defendant's attempted murder convictions. *See Apodaca,* 118 N.M. at 765-66, 887 P.2d at 759-60. "We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all permissible inferences in favor of upholding the verdict." *Id.* at 766, 887 P.2d at 760.

{12} Defendant maintains that the shooting incident was unforeseeable and exhibits no more than an impulsive reaction arising from chance, rather than a premeditated and carefully considered or calculated act. *See* UJI 14-201; *Garcia,* 114 N.M. at 274-75, 837 P.2d at 867-68. According to Defendant, he simply planned to escape, and could not have known at the time he planned his escape that he would be tackled by Granados, or that he would have the opportunity to grab a gun during the ensuing struggle. To support these assertions, Defendant points to the brevity of the incident, the evidence that the gun was easily fired because of its unsafe condition, and the evidence that the gun was never aimed at anyone for any length of time because several people were grabbing at it and attempting to remove it from Defendant's grip.

{13} The jury was free to reject Defendant's version of the facts. *See State v. Salazar,* 1997-NMSC-044, ¶ 46, 123 N.M. 778, 945 P.2d 996. However, even when viewed in the light most favorable to the State, we agree with Defendant that the evidence was insufficient to support a finding beyond a reasonable doubt that Defendant's attempt to kill Rogers and Granados was the result of deliberation as defined in UJI 14-201. *Cf. Apodaca,* 118 N.M. at 766, 887 P.2d at 760 ("There is no reasonable-doubt preclusion unless circumstantial evidence *viewed in the light most favorable to the State* also gives rise to an equally reasonable inference of innocence."). As in *Garcia,* 114 N.M. at 274, 837 P.2d at 867, there was no evidence presented at Defendant's trial to support the jury's conclusion that he decided to attempt to kill Rogers and Granados "as a result of careful thought; that he weighed the considerations for and against his proposed course of action; and that he weighed and considered the question of killing and his reasons for and against [the] choice."

{14} In particular, the evidence does not support the inference that Defendant's escape plan included any deliberation about whether to kill Granados or Rogers. Defendant did not reach for Granados' gun and fire it until immediately after Granados had tackled Defendant from behind and a physical struggle between the two men ensued. To say that Defendant was deliberating during this sudden struggle would not leave "any principled distinction between an impulsive killing and one that is deliberate and premeditated." *Id.* at 275, 837 P.2d at 868. Thus, the evidence cannot support a verdict of attempted first degree murder.

**▇▇▇** {15} However, notwithstanding the absence of deliberation, the evidence could have supported a reasonable inference that Defendant intended to kill Rogers and Granados when he aimed the gun at them, fired a shot, and attempted to pull the trigger again several times while saying "I'll kill

you" and "I'll shoot you." Under certain circumstances, we have recognized that "attempted second degree murder of the intentional variety may exist[,]" *State v. Johnson,* 103 N.M. 364, 371, 707 P.2d 1174, 1181 (Ct. App.1985), because the definition of second degree murder does not exclude intentional killings that do not involve deliberation, *see Garcia,* 114 N.M. at 273, 837 P.2d at 866. For these reasons, we believe the interests of justice are served in this case by remanding for a new trial on the offense of attempted second degree murder. *Cf. id.* at 276, 837 P.2d at 869 (opinion on rehearing) (remanding case for new trial on second degree murder where evidence was insufficient to support conviction for first degree murder); *Johnson,* 103 N.M. at 371, 707 P.2d at 1181 (remanding for new trial on attempted second degree murder where convictions for attempted first degree depraved mind murder were reversed because of fundamental error).

{16} On remand, a modification of the UJI for second degree murder will be necessary. *Cf. State v. Gillette,* 102 N.M. 695, 705, 699 P.2d 626, 636 (Ct.App.1985) (UJIs pertaining to attempted murder may be modified to fit evidence presented at trial and theory on which the defendant's culpability rests). Because the crime of attempt to commit a felony requires a specific intent to commit the underlying felony, *see* NMSA 1978, § 30–28–1 (1978); UJI 14–2801; *Johnson,* 103 N.M. at 369, 707 P.2d at 1179, and in this case the underlying felony involved the killing of Granados, Rogers, or both, a conviction for attempted second degree murder cannot be sustained on a finding that Defendant merely "knew that his acts created a strong probability of death or great bodily harm[,]" UJI 14–211 NMRA 1998. In order to convey that the attempt must be committed with the intent to kill, the district court may wish to use a jury instruction that employs the elements of first degree murder in UJI 14–201 but deletes all references to "deliberate."

{17} Finally, we note that the State chose not to pursue a theory of attempted first degree felony murder at trial after Defendant was indicted on open counts of at-

tempted first degree murder and the jury was sworn. Thus, the Double Jeopardy Clause prohibits the State from retrying Defendant on this alternative theory, *see Johnson,* 103 N.M. at 369–70, 707 P.2d at 1179–80, and we need not reach the issue of whether Defendant could be charged with the crime of attempted first degree felony murder under the circumstances of this case. *Cf. State v. Price,* 104 N.M. 703, 704–06, 726 P.2d 857, 858–60 (Ct.App.1986) (holding that the crime of attempted first degree felony murder does not exist). *But cf. State v. Ortega,* 112 N.M. 554, 561–63, 817 P.2d 1196, 1203–05 (1991) (recognizing intent requirement for first degree felony murder without deciding whether this requirement affects holding in *Price* ).

## B. *Change of Venue*

{18} Defendant's trial took place in the same courthouse in which the shooting incident occurred. Before trial, Defendant moved for a change of venue on the grounds that "there are no measures which can be taken to ensure that the jury will not have unauthorized viewing of the crime scene." The trial court denied the motion, but toured the area before trial and ordered specific measures to prevent jurors from improperly viewing the crime scene. These measures included using a courtroom in another part of the building, requiring jurors to enter and exit the courthouse through a different doorway, curtaining off part of the lobby, and stationing court personnel to ensure that jurors did not stray into the designated areas. In addition, the jury was given a tour of the crime scene under the court's supervision during the trial.

{19} On appeal, we review the trial court's venue decision for an abuse of discretion. *See State v. Hernandez,* 115 N.M. 6, 21, 846 P.2d 312, 327 (1993). Defendant contends that the trial court abused its discretion by failing to account for the prejudicial effect of holding the trial in the courthouse where the crime scene is located. *Cf.* NMSA 1978, § 38–3–3(A)(2) (1965) (grounds for change of venue). In particular, Defendant contends that Section 38–3–3(A)(2) must be read together with UJI 14–101 NMRA 1998, which instructs jurors that they "must not

visit the scene of the incident on [their] own." We agree with Defendant that it is important to instruct jurors not to visit the crime scene on their own, particularly when it is in a public place that would otherwise be readily accessible. However, in the present case, the trial court answered this concern by taking specific measures to prevent unauthorized viewing of the crime scene. Defendant has failed to make any showing that these measures were ineffective. *Cf. In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Hence, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for a change of venue.

## III. CONCLUSION

{20} We affirm Defendant's convictions for escape from the penitentiary, possession of a deadly weapon by a prisoner, and felon in possession of a firearm. We reverse Defendant's convictions for two counts of attempted first degree murder, and we remand for a new trial consistent with this opinion on two counts of attempted second degree murder.

{21} **IT IS SO ORDERED.**

HARTZ, C.J., and WECHSLER, J., concur.