2001–NMCA–073

33 P.3d 22

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Tex HERRERA, Defendant–Appellant.**

**No. 21,192.**

Court of Appeals of New Mexico.

June 20, 2001.

Certiorari Denied, No. 27,027, Sept. 19, 2001.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

Ray Twohig, Ray Twohig, P.C., Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant entered a guilty plea, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to two counts of attempted first-degree child abuse, a second-degree felony. He later moved to withdraw the plea, to evaluate his competency to enter the plea, and to reconsider his sentence. The trial court denied the motions. On appeal, Defendant argues that (1) the trial court erred in denying his motion to withdraw the plea because (a) the plea was to an offense that does not exist; (b) the plea was without a factual basis; and (c) the trial court did not properly advise him concerning the nature of an *Alford* plea; (2) the trial court erred in failing to first determine the issue of his competency to enter the plea before addressing his other motions attacking the plea and sentence; (3) court-appointed counsel was ineffective in failing to properly investigate the child abuse charge against him; and (4) the trial court erred in refusing to order the State to pay expert witness fees and costs. We affirm.

*Facts and Procedural Background*

{2} On May 6, 1998, Defendant's six-month old daughter, Angel, was admitted to the emergency room of the Gallup Indian Medical Center because she had apparently stopped breathing and gone into a seizure. She was airlifted to the University of New Mexico Hospital in Albuquerque for further medical treatment. Medical personnel diagnosed the infant as having suffered from severe and permanent brain damage, subdural hematomas, and retinal detachment in her eyes, resulting from Shaken Baby Syndrome. Defendant admitted shaking the infant. The State filed a criminal information charging Defendant with one count of child abuse resulting in great bodily harm, a first-degree felony, contrary to NMSA 1978, § 30–6–1(C)(1)(1997).

{3} Defendant entered into a plea and disposition agreement with the advice of court-appointed counsel. Defendant agreed to plead guilty, pursuant to *Alford*, to two counts of attempt to commit first-degree felony child abuse, a second-degree felony. In exchange, the State agreed to dismiss the first-degree child abuse charge. There was no agreement as to sentencing. The trial court accepted the plea agreement, and, after a sentencing hearing, imposed two nine-year sentences, to run consecutively, and suspended three years, for an effective sentence of fifteen years.

{4} After entry of judgment and sentence, Defendant, who was then still represented by court-appointed counsel, filed three motions attacking his plea and sentence: a motion for competency evaluation, a motion to withdraw the plea, and a motion for rehearing on sentencing. Defendant claimed that he was so distraught and traumatized by the child abuse charge that he did not know what he was doing when he entered the guilty plea. He also argued that he was not fully advised of the consequences of the plea. As a result, court-appointed counsel moved to withdraw as counsel because she had become a potential witness in the case. Defendant's family then hired private counsel to represent Defendant.

{5} With private counsel, Defendant filed a second motion to vacate the guilty plea and to set aside the sentence. He also filed a request for an evidentiary hearing, stating that there was an inadequate factual basis for the guilty plea, that he was misinformed concerning the nature of the guilty plea, that the plea was to two offenses which were not lesser-included offenses of the crime charged, and that the plea was not knowing and voluntary. In addition, Defendant claimed that although his family was paying for the services of his new attorney, he was still indigent, and therefore, the New Mexico Public Defender Department was required to pay expert witness fees and costs associated with litigating the motion to vacate the guilty plea.

{6} The trial court held a hearing only on the issue of expert witness fees and costs and

entered an order denying the motion as to that issue. The trial court later denied Defendant's motion to withdraw his plea without a hearing.

## Motion to Withdraw the Guilty Plea

### A. Standard of Review

{7} "On appeal, we review the trial court's denial of a defendant's motion to withdraw his guilty plea for an abuse of discretion." *State v. Barnett*, 1998–NMCA–105, ¶ 12, 125 N.M. 739, 965 P.2d 323. The "trial court abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error." *Id.* "A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *State v. Garcia*, 1996–NMSC–013, 121 N.M. 544, 546, 915 P.2d 300, 302.

### B. Attempted First–Degree Child Abuse

{8} Defendant argued to the trial court that he was entitled to withdraw his guilty plea because he pleaded guilty to an offense which is not a lesser-included offense of child abuse resulting in great bodily harm. On appeal, Defendant makes the more expansive argument that because there is no such crime as attempted negligent child abuse in New Mexico, he entered into an invalid plea agreement which the trial court had a duty to set aside. Both arguments are premised on the assumption that one cannot be convicted of attempt to commit child abuse because an attempt to commit a felony requires specific intent to commit the felony, whereas child abuse is a strict liability crime that does not require proof of criminal intent. *See* NMSA 1978, § 30–28–1 (1963); § 30–6–1(C); *State v. Ungarten*, 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct.App.1993) (stating that statute has been "characterized as a strict liability statute" and discussing nature of child abuse offense).

{9} Insofar as Defendant continues to argue that attempt to commit first-degree child abuse is not a lesser-included offense of first-degree child abuse, we do not believe such a distinction makes any difference. Under the Rules of Criminal Procedure, a district attorney is specifically authorized to negotiate a guilty or no contest plea with a defendant "to a charged offense or to a lesser or related offense." Rule 5–304(A)(1) NMRA 2001. Thus, according to the plain language of the rule, a plea agreement can include an agreement regarding not only the original offense charged but also "a lesser or related offense." *Id.*

{10} Although a "lesser" offense may encompass a lesser-included offense, the rule does not mandate that the lesser offense be necessarily included in the more serious offense charged. *See Burroughs v. Bd. of County Comm'rs*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975) (stating that appellate court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written"); *State v. Michael S.*, 120 N.M. 617, 618, 904 P.2d 595, 596 (Ct.App.1995) (explaining that a reviewing court ordinarily should give effect to plain language of statute or rule). As a result, a lesser offense may also include an uncharged, lesser-degree offense that is reasonably related to a charged offense. *See State v. Harrell*, 182 Wis.2d 408, 513 N.W.2d 676, 680 (Ct.App.1994) (explaining that in the context of a plea bargain, a defendant can enter a no contest or guilty plea to a crime which is reasonably related to a more serious crime for which a factual basis exists, "even when a true greater- and lesser-included offense relationship does not exist" between the two offenses).

{11} In this case, Defendant entered a guilty plea, not to the original charged offense, but to the lesser-related offense of attempt to commit first-degree child abuse. *Compare* § 30–6–1(C) (providing that child abuse that "results in great bodily harm or death to the child" is a first-degree felony) *with* § 30–28–1(A) (providing that one who attempts a first-degree felony is guilty of a second-degree felony). Because the plea was permissible under the rule, the issue of whether it was to a lesser-included offense has no bearing on the validity of Defendant's plea agreement.

{12} We thus turn to Defendant's contention on appeal that attempt to commit negligent child abuse is not a crime in New

Mexico. In this regard, Defendant particularly argues that attempted negligent child abuse is an oxymoron and a legal impossibility because one cannot have specific intent to commit negligent child abuse.

{13} Defendant correctly points out that the crime of attempt to commit a felony requires a specific intent to commit the underlying felony. *See* § 30–28–1; UJI 14–2801 NMRA 2001; *State v. Johnson,* 103 N.M. 364, 369, 707 P.2d 1174, 1179 (Ct.App. 1985). By contrast, child abuse is a strict liability crime that does not require proof of criminal intent because it may be committed "knowingly, intentionally or negligently." Section 30–6–1(C); *Ungarten,* 115 N.M. at 609, 856 P.2d at 571; *see also State v. Mascarenas,* 2000–NMSC–017, ¶¶ 16, 21, 129 N.M. 230, 4 P.3d 1221 (determining that negligent child abuse conviction requires instruction on criminal negligence standard and that failure to so instruct constitutes fundamental error); UJI 14–602 NMRA 2001 (incorporating concept of criminal negligence into instruction by including the term "reckless disregard," defined as when defendant "knew or should have known the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [the child]"). Because there is an inherent conflict between the elements of attempt and negligent child abuse, Defendant argues that he pleaded guilty to a non-existent offense and is thus entitled to withdraw his guilty plea, relying on *Johnson,* 103 N.M. at 369, 707 P.2d at 1179 (holding that the crime of attempted depraved mind murder does not exist because of the logical impossibility of intending to commit an unintentional crime) and *State v. Price,* 104 N.M. 703, 706, 726 P.2d 857, 860 (Ct.App.1986) (refusing to recognize crime of attempted felony murder where felony murder contains no mens rea requirement and is a result-oriented doctrine), *holding limited by State v. Ortega,* 112 N.M. 554, 560–63, 817 P.2d 1196, 1202–05 (1991). We do not agree.

■ {14} The State did not pursue a theory of prosecution based exclusively on negligent child abuse. Instead, it charged Defendant in the alternative with "knowingly, intentionally or negligently" committing child abuse resulting in great bodily harm, a first-degree felony. Defendant ultimately entered an *Alford* plea to two counts of "attempt to commit first degree felony child abuse," a second-degree felony. He did not plead specifically to "[a]ttempted negligent child abuse." Because child abuse may be committed "knowingly, intentionally or negligently," the guilty plea necessarily included a plea to attempted intentional child abuse resulting in great bodily harm.

{15} As Defendant appears to concede in his brief in chief, attempted intentional child abuse resulting in great bodily harm does not have the same legal inconsistency as attempted negligent child abuse. Although not bound by a party's concession on appeal, *see State v. Palmer,* 1998–NMCA–052, ¶ 12, 125 N.M. 86, 957 P.2d 71, we believe that there is such a crime as attempt to commit child abuse when the theory of the case is intentional child abuse.

{16} Intentional child abuse resulting in great bodily harm requires proof that: (1) the defendant intentionally and without justification placed the child in a situation which endangered the life or health of the child; (2) the defendant's acts or failure to act resulted in great bodily harm to the child; and (3) the child was under eighteen years of age. Section 30–6–1(C); UJI 14–602. "Intentionally," in child abuse cases, is defined as "purposely" doing an act. UJI 14–610 NMRA 2001. The definition of intent required for intentional child abuse closely tracks the definition of general criminal intent. *See* UJI 14–141 NMRA 2001; *State v. Brown,* 1996–NMSC–073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (explaining that general intent crime requires only "conscious wrongdoing" or purposely doing an act that is defined as a crime); *cf. State v. Mann,* 2000–NMCA–088, ¶ 12, 129 N.M. 600, 11 P.3d 564 (concluding, for purposes of double jeopardy analysis, that both intentional child abuse resulting in death and second-degree murder require that defendant intentionally committed an act that resulted in death), *cert. granted,* 129 N.M. 599, 11 P.3d 563 (2000).

{17} In comparison, an attempt to commit a felony requires that (1) the defendant intend to commit the felony and (2) the defendant begin to do an act which constitutes a substantial part of the felony but fails to commit the offense. Section 30–28–1; UJI 14–2801. Although an attempt to commit a felony is a specific intent crime, *Johnson*, 103 N.M. at 367, 707 P.2d at 1177, the intent required for attempt is not necessarily inconsistent with the intent required for intentional child abuse.

{18} Defendant, however, contends that "attempt to commit a felony, specifically intending to do so, where the felony is itself a general intent crime, is logically inconsistent" and thus cannot be a crime. Although this statement may be true as a general proposition, Defendant fails to acknowledge the existence of crimes, such as second-degree murder, that may be committed intentionally and thus are capable of being attempted, even though they are ordinarily regarded as general intent crimes. *See generally State v. Campos*, 1996–NMSC–043, ¶ 32, 122 N.M. 148, 921 P.2d 1266 (indicating that New Mexico continues to recognize second-degree murder as a general intent crime).

{19} In *Johnson*, 103 N.M. at 369–70, 707 P.2d at 1179–80, this Court held that although there is no such crime as attempted depraved mind murder, attempted second-degree murder of the intentional variety does exist. The rationale for this conclusion was that "while second degree murder can be committed without a specific intent, all cases of intentional killing are not necessarily excluded from second degree murder." *Id.* at 370, 707 P.2d at 1180. Thus, "a perpetrator could conceivably commit attempted second degree murder if he [or she] intended to kill someone, and did an act placing the person in danger, but the person did not die." *Id.; see also State v. Hernandez*, 1998–NMCA–167, ¶ 15, 126 N.M. 377, 970 P.2d 149.

{20} The same reasoning applies to the crime of intentional child abuse. Although child abuse is a strict liability offense that does not require criminal intent or even actual injury to be committed, *Ungarten*, 115 N.M. at 609, 856 P.2d at 571, the statutory offense of child abuse expressly includes intentional child abuse. Section 30–6–1(C). Intentional child abuse may include circumstances in which the defendant entertains a specific intent to inflict death or great bodily harm upon a child. As a result, it is possible for a defendant to attempt first-degree child abuse by intending to inflict death or great bodily harm upon a child, as in performing an act which places the child in danger, but failing to cause serious injury or death to the child. *Cf. Johnson*, 103 N.M. at 370, 707 P.2d at 1180. Therefore, attempted first-degree child abuse is a crime in New Mexico. Defendant entered a plea to an existing offense.

### C. Factual Basis for Defendant's Guilty Plea

{21} Defendant additionally argues that his guilty plea must be vacated because there is no factual basis for the plea. In particular, he contends that the State did not present any evidence at the plea hearing to support an attempt to commit child abuse, whether negligent or intentional. *See* Rule 5–304(G) (requiring factual basis for guilty plea before trial court enters judgment on such plea).

{22} Initially, we note that Defendant does not assert on appeal that there is no factual basis for the charged offense of child abuse resulting in great bodily harm. As we have already determined, Defendant was not required to plead to a charged offense or to a lesser-included offense, but could plead "to a lesser or related offense." Rule 5–304(A)(1); *see Harrell*, 513 N.W.2d at 680. When a defendant, in the context of a plea bargain, enters a plea to a lesser offense that is reasonably related to the more serious charged offense, courts from other jurisdictions have determined that the factual basis may support a finding that the defendant is guilty of either the crime charged or the crime which is the subject of the plea. *Id.; People v. Genes*, 58 Mich.App. 108, 227 N.W.2d 241, 243 (1975). Our review of the record in this case indicates that the prosecutor articulated a sufficient factual basis for the offense of child abuse resulting in great bodily harm as charged in the criminal information.

{23} At the hearing on the plea agreement, when the trial court asked for the factual basis for the plea, the prosecutor explained that Defendant's daughter, Angel, was hospitalized for injuries and was diagnosed with Shaken Baby Syndrome. The prosecutor further stated that Angel suffered severe neurological damage as a result of the alleged incident. He indicated that Defendant was in the sole position to have inflicted the injuries and that the injuries were the result of (1) Defendant's actions in shaking the infant and (2) Defendant's delay in reporting the manner in which the injuries occurred to medical authorities. The trial court specifically asked Defendant whether the facts asserted by the prosecutor could be presented to a jury and support a conviction, and Defendant admitted that they could. The prosecutor's narrative of the facts at the plea hearing and Defendant's admission presented an adequate factual basis for the higher underlying crime charged, and Defendant does not claim otherwise.

{24} Furthermore, Defendant, after consultation with counsel, knowingly and voluntarily agreed to plead guilty to the lesser offense of attempt to commit first-degree child abuse. *See State v. Jonathan B.*, 1998–NMSC–003, ¶ 11, 124 N.M. 620, 954 P.2d 52 (noting that the requirement in Rule 5–304 of a written plea agreement provides "evidence that a plea is knowing and voluntary"). During the plea proceeding, the prosecutor, in explaining why an *Alford* plea was being offered, specifically informed the trial court that Defendant wished to "avail himself of the lesser offense of attempt" even though it includes an element of intent to commit the offense, which might not be required to prove the more serious charged offense of child abuse resulting in great bodily harm. Defendant did not object or state anything to contradict the prosecutor's comments during the plea proceeding. Indeed, Defendant admitted that the facts presented by the prosecutor were sufficient to convict him. He then acknowledged that his plea was knowing and voluntary and entered the plea, pursuant to *Alford*, to two counts of attempted first-degree child abuse. The plea agreement, which was unconditional and contained a standard waiver provision, was accepted by the trial court and was filed of record.

{25} Because the record establishes that Defendant knowingly and voluntarily entered the plea to the lesser attempt offense as part of a bargain struck for his benefit, Defendant waived any challenge to the validity of the plea based on the alleged lack of evidence to support the element of intent. *See generally State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994) (stating that "a plea of guilty or nolo contendere, when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal"); *cf. State v. Padilla*, 104 N.M. 446, 450–51, 722 P.2d 697, 701–02 (Ct.App.1986) (determining that defendant, who requested and was given an instruction on lesser offense of voluntary manslaughter, which was not supported by the evidence at trial, would not be heard to complain on appeal that evidence was insufficient to convict him); *State v. Handa*, 120 N.M. 38, 45–46, 897 P.2d 225, 232–33 (Ct. App.1995) (concluding that when defendant agreed that a prior conditional discharge could be used as a prior conviction for enhancement purposes, he could not later contend that the prior conditional discharge was not a prior conviction); *State v. Muniz*, 2000–NMCA–089, ¶ 19, 129 N.M. 649, 11 P.3d 613 (acknowledging that upon remand juvenile may knowingly waive the right to challenge the legality of an adult sentence imposed as part of a plea agreement), *cert. granted*, 129 N.M. 599, 11 P.3d 563 (2000). As noted above, the denial of a motion to withdraw a guilty plea constitutes manifest error only when the undisputed facts show that the plea was not knowingly and voluntarily given. *Garcia*, 1996–NMSC–013, 121 N.M. at 546, 915 P.2d at 302; *see also State v. Lozano*, 1996–NMCA–075, ¶ 18, 122 N.M. 120, 921 P.2d 316 (noting that defendant should not be allowed to withdraw his guilty plea unless he lacked information relevant to decision-making process). In this case, Defendant had all the information relevant to making a knowing and voluntary plea to the lesser attempt offense.

{26} Additionally, Defendant claims that because he pleaded guilty to two counts of attempted first-degree child abuse, while being charged with only one count of first-degree child abuse, his sentencing exposure on the guilty plea was no different from his sentencing exposure on the original charge. Therefore, he suggests that he did not receive any benefit from his plea agreement. We disagree.

{27} Had Defendant been convicted of one count of first-degree child abuse, he would have been sentenced to a mandatory eighteen years of incarceration. *See* NMSA 1978, § 31–18–15(A)(1) (1999). Because Defendant entered his guilty plea to two counts of attempted first-degree child abuse, a second-degree felony, the trial court imposed two consecutive nine-year sentences and suspended three years, for an actual sentence of fifteen years. *See* § 30–28–1; § 31–18–15(A)(3). Thus, Defendant received the benefit of a reduced felony conviction and a lesser sentence. *See Jonathan B.,* 1998–NMSC–003, ¶ 17, 124 N.M. 620, 954 P.2d 52 ("There is no prejudice to a defendant's substantial rights if the defendant receives a sentence equal to or less than the maximum as represented by the State or the court.").

{28} Moreover, although Defendant may have been charged with only one count of first-degree child abuse, the record of the plea hearing, as described above, established a factual basis for two counts of first-degree child abuse. Thus, had Defendant declined to accept the State's plea offer, the State would have had grounds to amend the criminal information to add a second count of first-degree child abuse, thereby subjecting Defendant to an additional eighteen years or a mandatory thirty-six-year sentence, if convicted. *See* § 31–18–15(A)(1). Having received the benefit of the plea agreement, Defendant can not now contend that his plea lacks a factual basis due to the absence of evidence to support his intent to commit the offense. *See generally State v. Trujillo,* 117 N.M. 769, 772, 877 P.2d 575, 578 (1994) (recognizing "that both parties to a plea bargain make various concessions and gain certain advantages during plea negotiations"); *State v. Gallegos,* 91 N.M. 107, 110, 570 P.2d

938, 941 (Ct.App.1977) (noting that a defendant who benefits from a plea agreement "should not be permitted to welch on his part of the bargain").

### D. *Trial Court's Advice Concerning the Meaning of an Alford Plea*

{29} Defendant also argues that the trial court misinformed him concerning the meaning of an *Alford* plea. Under *Alford,* an accused may plead guilty while simultaneously maintaining his innocence. *Alford,* 400 U.S. at 37, 91 S.Ct. 160; *Hodge,* 118 N.M. at 412 n. 1, 882 P.2d at 3 n. 1. In this case, the trial court advised Defendant at the plea hearing that an *Alford* plea "means that you are entering a plea of guilty, but acknowledging only that you believe that, if this case was presented to a jury, that the jury could find you guilty of these charges." Although the trial court did not specifically inform Defendant that he was maintaining his innocence by entering the plea, it adequately explained the effect of the plea and did not prejudice Defendant because it necessarily had to find a factual basis for the plea before entering judgment upon the plea. *See* Rule 5–304(G); *cf. State v. Guerro,* 1999–NMCA–026, ¶¶ 5, 19, 126 N.M. 699, 974 P.2d 669 (noting counsel's statement that plea was an assertion of innocence but an acknowledgment that the state would likely have enough evidence to convict defendant and holding that defendant received "a fairly standard explanation of the *Alford* plea").

### *Failure to Initially Determine Defendant's Competency*

{30} Defendant next argues that the trial court erred in failing to consider the issue of his competency to enter the plea before addressing his other motions attacking the plea and sentence. Following the entry of the plea and sentencing, Defendant moved for a mental examination for purposes of challenging his competency to enter the guilty plea. Although the trial court apparently did not expressly rule on the motion for a competency evaluation, it implicitly denied the motion by expressly denying Defendant's related motion to withdraw the plea. *See Stinson v. Berry,* 1997–NMCA–076, ¶ 8, 123 N.M. 482,

943 P.2d 129 ("Where there has been no formal expression concerning a motion, a ruling can be implied by entry of final judgment or by entry of an order inconsistent with the granting of the relief sought.").

{31} The standard to determine competency to enter a guilty plea is the same as the standard to determine competency to stand trial. *State v. Lucas*, 110 N.M. 272, 275, 794 P.2d 1201, 1204 (Ct.App.1990). "A criminal defendant is competent to stand trial if he 'understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense.'" *State v. Garcia*, 2000–NMCA–014, ¶ 20, 128 N.M. 721, 998 P.2d 186 (quoting *State v. Najar*, 104 N.M. 540, 542, 724 P.2d 249, 251 (Ct.App. 1986)). In requesting a mental evaluation to support a claim of incompetency, the defendant must demonstrate "good cause" for the evaluation. Rule 5–602(C) NMRA 2001; *Najar*, 104 N.M. at 542, 724 P.2d at 251. We review the district court's denial of the motion for a competency evaluation for an abuse of discretion. *Garcia*, 2000–NMCA–014, ¶ 28, 128 N.M. 721, 998 P.2d 186 (stating that limiting the court's requirement in ordering a mental examination to a showing of good cause effectively invokes the district court's exercise of its discretion).

{32} Defendant's court-appointed counsel asserted in the motion for competency evaluation that there was "some question" regarding whether Defendant was competent during the plea proceeding. The motion alleged that, during the criminal proceedings, Defendant had ceased eating, was hiding in his room, was crying uncontrollably, and was taking antidepressants. In a separate request for evidentiary hearing, Defendant's subsequently-retained counsel asserted that, in the weeks prior to the entry of the guilty plea, Defendant was drinking heavily, talked about committing suicide to family and friends, attempted suicide once by slashing his wrists, and was often heard talking to himself in an incoherent and disjointed manner.

{33} A "question" regarding a defendant's competency, however, is not raised by an assertion of that issue, even though the assertion is in good faith." *State v. Hovey*, 80 N.M. 373, 375, 456 P.2d 206, 208 (Ct.App.1969). When a defendant or his counsel asserts a claim of competency, "the assertions must be substantiated," *Najar*, 104 N.M. at 543, 724 P.2d at 252, and must also establish reasonable cause for the belief that the defendant is not competent. *Hovey*, 80 N.M. at 375, 456 P.2d at 208; *see also State v. Chacon*, 100 N.M. 704, 706, 675 P.2d 1003, 1005 (Ct.App.1983) (holding that counsel's conclusions regarding defendant's competency, based on his drinking and refusal to agree to a plea bargain, without more, did not demonstrate good cause).

{34} Defendant's motions were not accompanied by any affidavits or other documentary evidence to substantiate his claim of incompetency. In addition, defense counsel did not assert to the trial court that Defendant did not understand the nature of the criminal charges against him or could not assist counsel in the defense of his case. *Cf. Hovey*, 80 N.M. at 376, 456 P.2d at 209. Indeed, as the State points out in its answer brief, Defendant himself maintained that he "constantly attempted to contact his attorney" regarding the defense of his case. As a result, we cannot say that the trial court abused its discretion in determining that there was not good cause to order a mental examination. Nor did the trial court err in failing to hold an evidentiary hearing on Defendant's competency. *See Guerro*, 1999–NMCA–026, ¶ 26, 126 N.M. 699, 974 P.2d 669 (noting that trial court has discretion to refuse an evidentiary hearing when defendant's claims do not state grounds for relief, are contradicted by occurrences on the record, or are within the court's personal knowledge).

*Ineffective Assistance of Counsel*

{35} Defendant contends that he was denied effective assistance of counsel because court-appointed counsel did not adequately investigate the case or retain an expert witness who could offer alternative explanations for the infant's injuries and testify fully concerning the shaken baby allegations. Defendant asks us to remand the ineffective assistance issue to the trial court for an

evidentiary hearing. A remand for an evidentiary hearing is appropriate only when the record on appeal establishes a prima facie case of ineffective assistance of counsel. *State v. Stenz*, 109 N.M. 536, 539, 787 P.2d 455, 458 (Ct.App.1990).

{36} The standard for effective assistance of counsel "is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent defense attorney." *State v. Hosteen*, 1996–NMCA–084, ¶ 5, 122 N.M. 228, 923 P.2d 595, *aff'd*, 1997–NMSC–063, 124 N.M. 402, 951 P.2d 619. "A prima facie case is made out when: (1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State ex rel. Children, Youth & Families Dep't v. David F. Sr.*, 121 N.M. 341, 348, 911 P.2d 235, 242 (Ct.App.1995).

{37} Based on the record before us, we can not conclude that the court-appointed attorney acted unreasonably. It appears that she obtained a list of possible experts and consulted with one expert who apparently gave the opinion that the State's evidence was consistent with a finding that the child was a victim of Shaken Baby Syndrome. Moreover, because there is no evidence in the record that the outcome of the case would have been any different if counsel had interviewed additional experts, we cannot determine that Defendant was prejudiced by the attorney's performance. Therefore, Defendant has not established a prima facie case of ineffective assistance of counsel. When the record on appeal does not establish a prima facie case of ineffective assistance of counsel, this Court has expressed its preference for resolution of the issue in habeas corpus proceedings over remand for an evidentiary hearing. *Hosteen*, 1996–NMCA–084, ¶ 6, 122 N.M. 228, 923 P.2d 595.

*Motion for Expert Witness Fees and Costs*

{38} Finally, Defendant argues that the trial court erred in denying his motion to compel the State to pay expert witness fees and costs relating to the motions filed by private counsel. Because we conclude that the trial court properly denied Defendant's motions to withdraw the guilty plea and to evaluate his competency to enter the plea, we do not reach this issue.

*Conclusion*

{39} We affirm the trial court's denial of Defendant's motion to withdraw the guilty plea. We conclude that the trial court did not err in failing to address the issue of Defendant's competency to enter the guilty plea at the outset of the post-conviction proceedings and that Defendant did not establish a prima facie case of ineffective assistance of counsel based upon court-appointed counsel's investigation of the shaken baby charge. Because we affirm on Defendant's other issues, we do not reach the issue of expert witness fees and costs. Therefore, we affirm the judgment and sentence.

{40} **IT IS SO ORDERED.**

WE CONCUR: M. CHRISTINA ARMIJO, Judge and IRA ROBINSON, Judge.