**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:   June 3, 2015

**NO. 33,778**

**MONTE DEMICHELE,**

Petitioner-Appellant,

v.

**STATE OF NEW MEXICO**
**TAXATION AND REVENUE DEPARTMENT**
**MOTOR VEHICLE DIVISION,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ted Baca, District Judge**

Joan M. Waters
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Lewis J. Terr, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**FRY, Judge.**

{1}     Petitioner Monte DeMichele appeals from the district court's order denying his petition for restoration of his driver's license. This Court, having reviewed the information presented at two evidentiary hearings held by the district court on this issue, concludes that the district court abused its discretion in determining that Petitioner failed to meet the "good cause" standard required for restoration pursuant to NMSA 1978, Section 66-5-5(D) (2011). Accordingly, we reverse the district court and remand for restoration of Petitioner's license.

**BACKGROUND**

{2}     Between 1990 and 2007, Petitioner was convicted six times of driving while intoxicated (DWI). The last of these arrests occurred on August 17, 2005. On December 9, 2005, an interlock device was placed in Petitioner's vehicle. On August 8, 2013, Petitioner requested restoration of his driver's license in accordance with Section 66-5-5(D). Two evidentiary hearings were held in this matter, on September 25, 2013, and March 19, 2014, the details of which are discussed below. At the conclusion of the first hearing, the district court postponed making a decision until Petitioner could provide six more months of interlock records. At the conclusion of

the second hearing, the district court denied the petition for restoration, notwithstanding the Motor Vehicle Division's support in favor of restoration.

{3}     At the first hearing on the petition for restoration, Petitioner testified as to his sobriety, his participation in Alcoholics Anonymous (AA) for the last eight years, and the fact that he has had no violations on his interlock device. Petitioner also testified that he worked with a personal counselor, completed all programs following his arrest, and changed his associations and his way of life to avoid his "triggers." In support of his request for restoration, Petitioner submitted letters of support from a number of people, including his employer, and interlock records from December 9, 2010, until February 22, 2013.

{4}     The State in its answer, and the district court at the hearing, expressed some concern over the number of refusals to retest indicated in Petitioner's interlock records. Petitioner submitted a letter from the interlock monitoring company explaining that the most common explanations for a refusal to retest are: (1) "that the driver was warming up the car in the morning, went back into their house and didn't get to retest in time"; or (2) "that they leave their vehicle running while running in somewhere to conduct an errand or other business and not having the knowledge that the interlock was requesting a test." Petitioner testified that "sometimes [he would] leave the ignition on, depending on the customer that [he was] speaking with, because

some of them walk [him] out to [his] vehicle[.]" The letter from the interlock company explained that it does "not consider a retest refusal to be suspicious, unless it is for a prolonged period of time usually exceeding [eight to ten] minutes OR that all retests from the initial test to ignition off have been ignored." The State conceded that it did not know precisely how the refusals worked and indicated that it was satisfied with Petitioner's explanation.

{5} At the conclusion of the hearing, the district court asked Petitioner if he thought "that having the interlock is a useful tool for [him] to really avoid drinking and driving[.]" Petitioner acknowledged that the interlock device had been a useful tool, "especially for the first few years" when he was "trying to build tools and things like that to keep [him] away from [his] bad decisions that [he] had made in [his] past[.]" However, he testified that he now had "different avenues and [he] trust[s] [him]self."

The district court then went on to conclude the hearing by stating:

> Well, you know, you've done a lot of good, there's no question you've made—you've worked hard[; ]you have a lot of recommendations here from people who will attest to your new character and your hard work and your family life. What I'm balancing is, you've had about eight good years, I suppose, but you had about 30 pretty bad years—
>
> . . . .

3

—you know. And I think I'd prefer to see a little more time go by to make sure the good years stay good years because I think the interlock does you some good, as you have attested to.

So what I want to do is, I'm going to continue this and reschedule it again for sometime in January. Come back and we'll look at it and see where things are. If everything is the same, then I think you're going to have a good chance to get your license restored.

{6} The hearing reconvened about six months after the first hearing. At this hearing, Petitioner submitted interlock records for the period from September 9, 2013, through February 7, 2014. The district court asked the State for any relevant information from the newly submitted interlock records, and the State indicated that there were "three indications of pass greater than zero." However, the State explained that these occur when "the machine detects alcohol from some source, and it can be ambient in the air." The State went on to explain:

So it could be anything from—I don't know what the word would be— scant background alcohol sensation or sensing alcohol from some source up to .024, because anything greater than .025, regulations require that they list that as a violation.

. . . .

In other words, I don't know that this particular company can do a printout, but I've seen details of those things where sometimes the levels are at an extremely insignificant level, like .000 something.

When asked by the district court to explain the low level readings, Petitioner stated that, based on his conversation with a person at the interlock monitoring company,

4

it could be the result of his being an insulin-dependent diabetic and that the low level readings were .00024 and .00026. The State also pointed out to the district court that the substance abuse evaluation that had been prepared at the Court's request confirmed that Petitioner is an insulin-dependent diabetic. In addition, the State pointed out that the substance abuse evaluation[1] indicated that Petitioner was truthful and not dependent on alcohol. The district court again questioned Petitioner about the number of refusals in his interlock records.

{7}    In addition, the district court again made remarks about the interlock device being a significant tool:

> I just think that in your case, like in a lot of other cases, the one significant tool that has been brought into your situation that you didn't have during those [fifteen] to [seventeen] years when you were drinking and driving was the ignition interlock device. That seems, to me, to be the one thing that has helped more than anything else. Since you did that, you haven't had any arrests for drinking and driving.
>
> . . . .
>
> So it's hard for me to understand why I would want to take away the one tool that seems to have resulted in the most success.

The district court then denied Petitioner's petition for restoration, stating:

---

[1]We note that the substance abuse evaluation ordered by the district court also provided that Defendant scored "a [l]ow [p]robability of having a current [s]ubstance [d]ependence [d]isorder . . . due to his continued eight full years of ongoing sobriety and due to his continued utilization of AA and its recovery program for life"; "a very low disposition . . . for alcohol use and driving"; and "below the threshold for indication of hazardous drinking or alcohol dependency."

I'm glad you're doing well, but I'm afraid I'm going to deny your petition. There is very little room for error. You continue to have some readings of alcohol. The reason for that is all speculation. I don't know why it's in there. I recognize that they are low readings, but they're there, and with somebody with six DWI convictions, I mean, that's a lot of DWI convictions, and you're asking me to take away the one tool that I think has really helped you not get any more DWI convictions, and I just don't see, based on the record before me, that you have established good cause that would allow me to do that. So your petition is denied.

Petitioner appeals.

**DISCUSSION**

{8}     On appeal, Petitioner contends that the district court abused its discretion in its determination that Petitioner failed to demonstrate "good cause" for restoration of his license. The State offers no opposition, agreeing that the district court abused its discretion in denying Petitioner's request. However, this Court is not bound by the State's concession. *See State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775 ("This Court . . . is not bound by the [s]tate's concession and we conduct our own analysis[.]"). We note that

> [a]lthough a confession of error by the Attorney General is entitled to great weight, it does not relieve this [C]ourt of the obligation to perform our judicial function. The public interest in criminal appeals does not permit their disposition by party stipulation. We must therefore independently review the proceedings below to insure that the error confessed is supported by the record.

*State v. Maes*, 1983-NMCA-073, ¶ 7, 100 N.M. 78, 665 P.2d 1169 (internal quotation marks and citation omitted), *abrogated on other grounds by State v. Armijo*, 2005-

6

NMCA-010, ¶ 27, 136 N.M. 723, 104 P.3d 1114. While we acknowledge that this is not a criminal appeal, there is a significant public interest in alleviating drunk driving such that, where this Court is being asked to reverse the district court's denial of restoration of a driver's license to a person with six DWI convictions, it would be imprudent for this Court to rely solely on the State's stipulation and to decline to conduct our own independent review of the record prior to reversing the district court.

**I.      Standard of Review**

{9}      Given that "good cause" for restoration has never been addressed by a formal opinion of this Court or the New Mexico Supreme Court, we must first determine what standard of review this Court applies in reviewing the decision of the district court. To do so, we begin by looking to the statutory language governing restoration and inquiring what authority the Legislature bestowed on the district court to make this determination.

{10}      Section 66-5-5(D) provides, in relevant part, that the Motor Vehicle Division

shall not issue a driver's license under the Motor Vehicle Code to any person:

. . . .

(D)    who is four or more times convicted of driving a motor vehicle while under the influence of intoxicating liquor or narcotic drug regardless of whether the convictions are under the laws or ordinances of this state or any municipality or county of this state or under the laws or ordinances of any other state, the District of Columbia or any

7

governmental subdivision thereof, except as provided in the Ignition Interlock Licensing Act. Five years from the date of the fourth conviction and every five years thereafter, the person may apply to any district court of this state for restoration of the license, and the court, upon good cause being shown, may order restoration of the license applied for; provided that the person has not been subsequently convicted of driving a motor vehicle while under the influence of intoxicating liquor or drugs.

{11} Section 66-5-5(D) states that the district court "*may* order restoration of the license applied for." Based on the use of this discretionary language in the statute, we conclude that a district court's determination as to whether to restore a petitioner's license is discretionary in nature. *See State v. Pacheco*, 2008-NMCA-055, ¶ 25, 143 N.M. 851, 182 P.3d 834 ("The word 'may' indicates that the district court has discretion[.]"); *see also* NMSA 1978, § 12-2A-4(B) (1997) (" 'May' confers a power, authority, privilege or right."). In recognition of this discretion, we will reverse the district court's decision only on a showing of an abuse of discretion. *See, e.g.*, *Monsanto v. Monsanto*, 1995-NMCA-048, ¶ 9, 119 N.M. 678, 894 P.2d 1034 (stating that the determination "is within the discretion of the [district] court and will be reviewed only to determine whether there has been an abuse of discretion").

{12} "A trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances, or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances." *State v. Soto*, 2007-NMCA-077, ¶ 10, 142 N.M. 32, 162 P.3d 187 (internal quotation

marks and citation omitted). "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and citations omitted). Therefore, having determined that our review is for an abuse of discretion, we now turn to the merits of Petitioner's claim of error.

## II.      Restoration Pursuant to Section 66-5-5(D)

## A.      Good Cause

{13}      The statutory language quoted above provides that a district court has the discretion to order restoration of a petitioner's driver's license upon a showing of good cause. *See* § 66-5-5(D). In the present case, the district court determined that Petitioner had failed to establish good cause. In order for this Court to assess whether the district court abused its discretion in making this determination, we must first determine the meaning and scope of the term "good cause" within the context of Section 66-5-5.

{14}      "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M.

764, 918 P.2d 350. However, this Court is limited in our interpretation of statutes by the plain meaning rule. *See Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 46, 333 P.3d 947 ("New Mexico courts have long honored [the] statutory command [that the text of a statute or rule is the primary, essential source of its meaning] through application of the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted)). The plain meaning rule presumes that the words in a statutory provision "have been used according to their plain, natural, and usual signification and import, and the courts are not at liberty to disregard the plain meaning of words . . . in order to search for some other conjectured intent." *In re Rescue Ecoversity Petition*, 2012-NMCA-008, ¶ 6, 270 P.3d 104 (internal quotation marks and citation omitted). Thus, pursuant to the plain meaning rule, we will not read into a statutory provision "language which is not there, especially when it makes sense as it is written." *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (internal quotation marks and citation omitted).

{15}     The term "good cause" is not defined in Section 66-5-5 or elsewhere in the Motor Vehicle Code. Further, the term "good cause" has not previously been defined in this context by a published opinion of our appellate courts. We therefore look to

the common meaning of the term "good cause" and draw from interpretations in other contexts in order to ascertain the Legislature's intent.

{16} The statutes, rules, and case law of this state are replete with references to "good cause" standards. *See, e.g.*, *State v. Guthrie*, 2011-NMSC-014, ¶ 40, 150 N.M. 84, 257 P.3d 904 (holding that "good cause" for not requiring confrontation in a probation revocation proceeding exists where "the state's evidence is uncontested, corroborated by other reliable evidence, and documented by a reliable source without a motive to fabricate"); *State v. Munoz*, 2006-NMSC-005, ¶ 9, 139 N.M. 106, 129 P.3d 142 (defining good cause as "a good faith and reasonable belief" in the context of the statute setting forth the offense of custodial interference (internal quotation marks and citation omitted)); *Ortiz v. Shaw*, 2008-NMCA-136, ¶ 17, 145 N.M. 58, 193 P.3d 605 (concluding that "good cause" to set aside a default judgment existed where the defendant had demonstrated that she was not properly served with the complaint); *State v. Herrera*, 2001-NMCA-073, ¶¶ 32-34, 131 N.M. 22, 33 P.3d 22 (determining that "good cause" to order a mental examination of the defendant was not established by the mere assertion of counsel, but required an affidavit or other documentary evidence to substantiate the defendant's claims of incompetency); *Vigil v. Thriftway Mktg. Corp.*, 1994-NMCA-009, ¶¶ 14, 16, 117 N.M. 176, 870 P.2d 138 (determining that reinstatement for "good cause" after a *sua sponte* dismissal under

Rule 1-041(E)(2) NMRA for failure to prosecute should occur where a party demonstrates "that he is ready, willing, and able to proceed with the prosecution of his claim and that the delay in the prosecution is not wholly without justification" (internal quotation marks and citation omitted)). While each of these cases deals with a completely different statute, rule, or principle of law, they demonstrate that what constitutes "good cause" varies, depending on the circumstances in which "good cause" is being applied. Apart from the context in which it is applied, "good cause" is simply defined as "[a] legally sufficient reason." *Black's Law Dictionary* 266 (10th ed. 2014) (also stating that "[g]ood cause is often the burden placed on a litigant . . . to show why a request should be granted or an action excused"). Thus, we must determine what is a legally sufficient basis for restoration within the context of Section 66-5-5.

{17}     Our Supreme Court has previously acknowledged that license revocation serves the "purpose of protecting the public from the dangers presented by drunk drivers and helps enforce regulatory compliance with the laws governing the licensed activity of driving." *State ex rel. Schwartz v. Kennedy*, 1995-NMSC-069, ¶ 35, 120 N.M. 619, 904 P.2d 1044. Similarly, the requirement that a driver's license be conditioned on the installation and use of an ignition interlock device serves a similar purpose by "prevent[ing] the operation of a motor vehicle by an intoxicated or

impaired person." *See* NMSA 1978, § 66-5-502(B) (2005, amended 2013) (defining "ignition interlock device" (internal quotation marks omitted)).

{18} This acknowledgment by our Supreme Court that license revocation is for the "purpose of protecting the public from licensees who are . . . dangerous," *Kennedy*, 1995-NMSC-069, ¶ 38, is reflected in Section 66-5-5. *See* § 66-5-5(C) (prohibiting the Motor Vehicle Division from issuing a driver's license to "[a] habitual user of narcotic drugs or alcohol"); § 66-5-5(F) (prohibiting the Motor Vehicle Division from issuing a driver's license to a person "afflicted with or who is suffering from any mental disability or disease that would render the person unable to drive a motor vehicle with safety upon the highways and who has not, at the time of application, been restored to health"); § 66-5-5(I) (prohibiting the Motor Vehicle Division from issuing a driver's license "when the director has good cause to believe that the operation of a motor vehicle on the highways by the person would be inimical to public safety or welfare").

{19} These limitations on who can be issued a license by the Motor Vehicle Division clearly reflect a purpose and policy of protecting the public from unsafe drivers. In this vein, giving a driver's license to a person who has a habitual alcohol problem is presumed by the Legislature to pose a threat to public safety. *See* § 66-5-5(C). Similarly, a person who has four or more DWI convictions and acquires another

DWI conviction while waiting the five years to apply for restoration is also presumed to pose a threat to public safety. Section 66-5-5(D). These provisions provide illumination as to what might constitute a legally sufficient justification for restoration pursuant to Section 66-5-5(D). Thus, at minimum, a petitioner would need to establish that he or she does not have a habitual alcohol problem and has not received any subsequent DWI convictions so that he was not barred from restoration under Subsections C or D. Beyond this minimal showing, in order to present evidence of a good cause, we conclude that a petitioner must also demonstrate that he or she no longer presents a threat to public safety if given an unrestricted license. This conclusion furthers the purpose of revocation by "protecting the public from licensees who are . . . dangerous." *See Kennedy*, 1995-NMSC-069, ¶ 38. Applying this definition of "good cause," we now turn to the district court's determination that Petitioner did not meet this standard.

**B.     Application of Good Cause**

{20}     We agree with the district court that the restoration of a driver's license revoked based on multiple DWI convictions is not a decision to be undertaken lightly. And we note that the Legislature has chosen to vest the district court with discretion in making this determination based on a showing of good cause. However, reviewing the decision of a lower court for an abuse of discretion does not prevent meaningful

review by an appellate court. *Cf. Quintana v. Acosta*, 2014-NMCA-015, ¶ 12, 316 P.3d 912 ("An abuse of discretion standard of review, however, is not tantamount to rubber-stamping the trial judge's decision, and we are not prevented from conducting a meaningful analysis of the admission of the expert testimony to ensure that the trial judge's decision was in accordance with the Rules of Evidence and the evidence in the case." (internal quotation marks and citations omitted)).  As we noted above, "[a] trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances, or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances." *Soto*, 2007-NMCA-077, ¶ 10 (internal quotation marks and citation omitted). Thus, we review the district court's determination that Petitioner failed to establish that he was no longer a threat to the public to determine if it was contrary to the "reasonable, probable, and actual deductions that may be drawn from the facts and circumstances" of this case. *Id.*

{21}     Petitioner testified that he had been sober for eight-and-a-half years and had not had a single interlock violation during that time period. The State did not contest this testimony, nor did the district court raise any concerns with respect to actual violations. Rather, the focus of the inquiry by the district court was based on the high number of retest refusals and readings showing the presence of alcohol at above zero

but below .025. With respect to the refusals, Petitioner offered the explanation of the interlock monitoring company, which also indicated that documented refusals such as Petitioner's were not considered suspicious. With respect to the presence of alcohol above zero but below .025, Petitioner explained that this could be because he is an insulin-dependent diabetic and produces sugar alcohol in his system and that his readings were .00024 and .00026, and the State explained that often these readings will be as low as ".000 something." The district court appears to have dismissed Petitioner's explanation as "speculative." Yet, even if the district court were to disregard Petitioner's explanations, we conclude that the district court's determination that Petitioner had not established good cause for reinstatement of his license based on refusals to retest and readings showing the presence of alcohol at above zero but below .025—neither of which is considered a reportable violation—is incorrect. The uncontested evidence, including the lack of violations over an eight-and-a-half-year period, does not permit a reasonable inference that Petitioner still poses a threat to public safety. We therefore conclude that there is no reasonable view of the information presented to the district court that would permit a conclusion that Petitioner failed to establish good cause. As a result, we conclude that the district court abused its discretion. *See id.*

{22}     Moreover, we note that the district court's apparent desire to retain the interlock restriction on Petitioner's license as a means of ensuring that he not commit the act of DWI in the future is contrary to Section 66-5-5(D) unless there is a basis for the district court to conclude that the need for this protective and deterrent mechanism still exists. *See* § 66-5-5(D) (allowing a person with four or more DWI convictions to apply for restoration of his or her driver's license). In other words, a district court may not require that a petitioner maintain an interlock device on his or her vehicle solely based on the number of prior DWIs held by the petitioner or simply because an interlock device can work as a deterrent to drinking and driving.  Our Legislature has created a statutory scheme that allows for a party with multiple prior DWI convictions to petition for restoration of his or her driver's license. Had the Legislature intended that people receiving six DWI convictions be required to maintain an interlock device indefinitely, despite a showing of good cause, the Legislature could have drafted the statute to say so. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires."(alteration, internal quotation marks, and citation omitted)).Thus, where a petitioner makes a showing of "good cause," denying the petition for restoration because of the number of prior DWIs held by the petitioner or because interlock devices generally provide a deterrent is inconsistent with Section

66-5-5(D) and constitutes an abuse of discretion. *See State v. Favela*, 2013-NMCA-102, ¶ 16, 311 P.3d 1213 ("An abuse of discretion may also occur when the district court exercises its discretion based on a misunderstanding of the law." (internal quotation marks and citation omitted)), *aff'd,* 2015-NMSC-005, 343 P.3d 178.

**CONCLUSION**

{23}   For the foregoing reasons, we conclude that the district court abused its discretion in determining that Petitioner failed to establish good cause for reinstatement of his license. We therefore reverse and remand for reinstatement of Petitioner's license.

{24}   **IT IS SO ORDERED.**

_____
                                                   **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**J. MILES HANISEE, Judge**