2000-NMCA-014

998 P.2d 186

**STATE of New Mexico, Appellant,**

v.

**Arthur GARCIA, Appellee.**

**No. 19,529.**

Court of Appeals of New Mexico.

Jan. 25, 2000.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Appellant.

Roger E. Michener, Michener Law Firm, LLC, Placitas, for Appellee.

## OPINION

ARMIJO, Judge.

{1} The formal opinion filed on December 17, 1999 is hereby withdrawn and the following opinion is substituted.

{2} The district court determined Arthur Garcia (Defendant) was not competent to stand trial upon criminal charges arising from a May 14, 1996, car accident that left Linda Rodriguez seriously injured. The State now appeals. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

{3} The State's argument is far-ranging in its reliance upon the district court proceedings; however, it has only raised two issues for consideration. For purposes of our analysis, therefore, we narrow our outline of the factual and procedural background to: (1) the district court's initial ordering of a mental evaluation of Defendant; (2) the State's motion for a second mental evaluation; and (3) the hearing as to Defendant's competency.

1. *The district court's order for a mental evaluation.*

{4} Defendant's arraignment was convened on November 24, 1997, at which time his counsel first raised the question of whether Defendant was competent to stand trial. State's counsel argued that Defendant appeared lucid and pointed out difficulties posed in attempting to secure a mental evaluation of him without an arraignment and entry of charges. The district court ruled that Defendant was competent for purposes of arraignment and proceeded with the hearing. Defendant pled not guilty.

{5} Upon Defendant's plea, the court remanded him to the sheriff's custody, postponing any determination of whether he could be released pending trial until the next day. At the next day's hearing, the court again noted that Defendant had been competent for purposes of arraignment; however, it recognized that the issue was likely to recur throughout the pretrial proceedings.

{6} On December 5, 1997, the district court convened a bond hearing, at which defense counsel again alerted the court to his concerns as to Defendant's competency. Specifically, counsel discussed his difficulties in attempting to maintain effective—indeed, any—communications with him. The court responded:

When [Defendant] was arraigned ... it was clear he was competent for that process, but I think there's a high risk he could decompensate very easily. It appears to me, viewing Mr. Garcia today, that he has even decompensated over the last two weeks being in custody and that would interrupt, if not would drastically effect the proceedings in total.

{7} At this point, defense counsel approached the bench, presented the court with a document for its review, and spoke with the judge off-record. State's counsel inquired as to what the two were discussing, and the judge replied, "It's an ex parte order for an evaluation." State's counsel replied simply, "oh, okay." The tape-recorded transcript is blank immediately after this exchange, shut off in the midst of an on-record presentation by defense counsel regarding a separate issue.

2. *The State's request for a second mental evaluation.*

{8} At the State's request, the district court convened a status conference on April 3, 1998. At that hearing, the State requested that the court set a date for a hearing as to Defendant's competency. The State further requested that it be allowed its own mental evaluation of Defendant, so that it would not have to rely on "the defense's expert." The State acknowledged that it had already received a mental evaluation of Defendant, conducted by Dr. Susan Cave who was on contract with the New Mexico Department of Health. Doctor Cave concluded Defendant was not competent to stand trial. Defense counsel responded by pointing out that Dr. Cave was not an expert hired by the defense, but was an employee of the state and appointed by the court pursuant to statutory authority. The court deferred any ruling upon the State's request, ordering the State to make a formal, written motion that alerted Defendant to the precise nature and grounds of its request. The State submitted its succinct motion, again asserting that Dr. Cave was Defendant's expert, on April 6.

{9} The district court convened a bond revocation and apparent motions hearing a

week later. At this hearing, the State again requested that Defendant be sent to the state facility in Las Vegas for a full mental competency evaluation. However, defense counsel noted logistical problems in that as Dr. Cave had already conducted a local examination of Defendant, the Las Vegas facility would not accept Defendant for a second evaluation. The court agreed, noting:

> the local forensic evaluation team has determined that [Defendant] is incompetent, [the Las Vegas facility] won't take him to redo that part. So if you want him evaluated such that you have the opportunity to either concur or challenge whether or not he's competent . . . we need to talk about it more deeply.

After a brief and unexplained recess, the State made a record of its reasons for wanting a second evaluation as to Defendant's competence:

> Your honor, . . . the district attorney's office is not willing to accept the forensic evaluation conducted by Dr. Cave because there is no evaluation for reports of the defendant's dangerousness, and that's the key issue as to whether the defendant is dangerous to others. . . . And the district attorney's office is not willing, would not call Dr. Cave as an expert for the district attorney's office. We would like to have a separate person or group of people evaluate the defendant other than Dr. Cave. If given the choice, we would not choose Dr. Cave to have the defendant evaluated.

The district court denied the State's request, designating Dr. Cave as the court's expert regarding competency, but did authorize the State to conduct a separate evaluation of Defendant solely as to his potential dangerousness.

### 3. *The hearing as to Defendant's competency.*

{10} On May 14, 1999, the district court convened Defendant's competency hearing. Defense counsel called two witnesses at the hearing: Dr. Cave and P. Jeffrey Jones, Defendant's initial trial attorney and co-counsel at the hearing.

{11} Doctor Cave spoke extensively as to her evaluation of Defendant and her opinion regarding his capacity to stand trial. She explained that Defendant suffered from dementia, secondary to diabetes; mild to moderate mental retardation, which was likely connected to his dementia; several "medical diagnoses," including diabetes, osteoporosis, and a fungal infection of his feet; and that he had a history of alcoholism. Doctor Cave noted that Defendant was in such a state that as of the date of her evaluation he could not tend even to his own daily, and significant, medical needs. This observation appears to be consistent with the fact that during the course of the proceedings below, Defendant was hospitalized on at least two occasions for diabetes-related emergencies.

{12} Doctor Cave testified as to her administration of several diagnostic tests, including the "trailmaking A and B" tests, the Wechsler Adult Intelligence Scale-revised, and the Competency Assessment Instrument-revised (CAI-revised). Upon her evaluation of Defendant's performance on these tests, she observed that Defendant's motor skills scored at the bottom of the scale, which she attributed to his inability to focus; that he had "severely impaired" cognitive abilities, including significant memory dysfunction; and that he demonstrated organic brain dysfunction.

{13} On both direct and cross-examinations, Dr. Cave testified in significant detail regarding her attempted administration of the CAI-revised. She described the instrument as a set of interview questions designed to inquire as to a criminal defendant's general understanding of the legal process. She also described it as the standard competency instrument in the field. She detailed many of the questions she asked Defendant, as well as what answers he gave. However, she also testified that she was unable to complete her administration of the instrument beyond the first few questions as Defendant became agitated, defensive, angry, and frustrated. It was her opinion that his reaction stemmed from his inability to focus on, understand, and track her questions.

{14} Doctor Cave was asked whether she thought Defendant was malingering. She stated that in her opinion he was not. She testified as to her training to discern whether

a criminal defendant is faking his or her symptoms. The primary tool she noted for making such a determination is reliance upon "collateral sources," such as interviews with a defendant's case worker, family, associates, and the like, the goal being to look for a consistent pattern. Upon such interviews in Defendant's case, she noted that his lack of competence was universally corroborated and concluded that he was not malingering.

{15} Finally, she testified that, upon her experience in conducting thousands of competency evaluations, "there's no doubt in my mind" that Defendant was not competent to stand trial.

{16} Defense counsel next called Attorney Jones to the stand. He testified generally as to his experience with Defendant, the difficulties he had in communicating the nature and gravity of the charges against him, and in working effectively with him. He further testified that of the 3000 to 4000 clients he has had as a public defender, Defendant is among the most difficult he has had to work with. He attributed this difficulty to Defendant's inability to understand what was happening and how to cooperate with his attorney. Finally, he testified, based upon Defendant's consistently erratic behavior, that he did not believe Defendant was malingering.

{17} At the conclusion of the competency portion of the hearing, the district court ruled:

> With regard to the issue of competency, I have uncontroverted testimony and evidence that Mr. Arthur Garcia is not now competent to stand trial, meaningfully participate in his own defense.

{18} Upon completion of the second component of the hearing, that dealing with dangerousness, the court dismissed all charges against Defendant without prejudice.

DISCUSSION

{19} The State argues that the district court abused its discretion by finding Defendant incompetent to stand trial. It further contends that the district court erred in refusing its request for a second psychological evaluation of Defendant. We reject each of these contentions.

1. *The Competency Determination.*

{20} A criminal defendant is competent to stand trial if he "understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." *State v. Najar,* 104 N.M. 540, 542, 724 P.2d 249, 251 (Ct.App.1986). It is the defendant's burden to demonstrate incompetency by a preponderance of the evidence. *See State v. Chapman,* 104 N.M. 324, 327–28, 721 P.2d 392, 395–96 (1986). We review the district court's ruling as to Defendant's competency for an abuse of discretion. *See State v. Duarte,* 1996–NMCA–038, ¶ 15, 121 N.M. 553, 915 P.2d 309.

{21} The State contends that Defendant adduced no evidence below to establish his incompetence. This contention is without merit. As discussed above, Dr. Cave testified specifically and at length as to the details of her evaluation of Defendant. She specifically discussed her administration of standard tests of competency and intelligence as well as her opinion as to how his performance on these tests demonstrated his lack of competence. Furthermore, she emphasized that she based her opinion not solely upon her personal evaluation of Defendant, but also upon her collateral interviews with his family members and associates. Upon these additional sources, she testified as to the consistent portrayal of Defendant as an individual with long-standing psychological problems that, in her opinion, made him unable to understand the nature of the proceedings against him or to participate meaningfully in his own defense. Attorney Jones' testimony further supports the district court's ruling.

{22} Furthermore, the district court had the opportunity to witness first-hand Defendant's condition throughout arraignment, periodic motions hearings and status conferences, and the competency hearing itself. As the trial judge noted at the conclusion of the competency hearing:

> What is clear over the last four months is that but for the level of support both in the community and home through the efforts

of a number of health care providers and others ... but for these efforts, that Mr. Garcia would be dead at this moment.... If he was released at this moment, he probably couldn't get himself out of the building.

{23} It is beyond dispute that the district court acts within its authority as fact finder by weighing and drawing its own conclusions from the evidence presented. *See, e.g., State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). This is precisely the authority the district court exercised in this instance. Therefore, given the wealth of evidence upon which the court could make its determination, the district court did not abuse its discretion in concluding that Defendant was incompetent to stand trial. We affirm the ruling of the trial court as to this issue.

2. *The State's Request for a Second Evaluation.*

{24} The State also claims error in the district court's refusing to allow a second mental competency evaluation of Defendant. On appeal, it argues that basic principles of fairness permit the State to have its own, independent evaluation as to Defendant's competency. Upon the facts of this case, we disagree and affirm the district court's ruling.

{25} In its briefs before this tribunal, the State asserts that the district court refused to allow a second evaluation of the Defendant, ruling that the additional forensic evaluation would be irrelevant. However, the district court made *no* such ruling. What the court ruled irrelevant was a piece of evidence the State attempted to introduce at Defendant's competency hearing.

{26} Turning to the issue presented, there is no explicit provision, in either rule or statute, that allows the district court to order more than one mental evaluation of a criminal defendant insofar as his or her competency to stand trial. However, there is also no prohibition. Upon our review of the applicable law, we conclude that Rule 5–602(C) NMRA 1999 provides an appropriate procedure for any request, be it initial or subsequent, for court-ordered mental evaluations of a criminal defendant.

{27} Rule 5–602(C) in part provides: "Upon motion and upon good cause shown, the court shall order a mental examination of the defendant before making any determination of competency under this rule." As such, it does not specify who can move for an evaluation. *Cf.* Rule 5–602(B)(1) (providing the court may inquire as to the defendant's competency upon its own motion).

{28} Whether such motion is to be granted, however, is contingent upon the movant's demonstration of "good cause." Rule 5–602(C). While the rule employs mandatory language, *see id.* (providing "court *shall* order a mental examination" (emphasis added)), limiting this provision to the movant's showing of good cause effectively invokes the district court's exercise of its discretion. *See State ex rel. Letts by Letts v. Zakaib,* 189 W.Va. 616, 433 S.E.2d 554, 557 (1993) (holding even where party demonstrates "good cause" justifying medical examination, matter is still within the court's discretion); *cf. State v. Hovey,* 106 N.M. 300, 302, 742 P.2d 512, 514 (1987) (recognizing "good cause" provision in court rule as vesting district court with discretion). We, therefore, review the district court's denial of the State's request for a second evaluation for an abuse of that discretion.

{29} The State's conclusory assertions that it must be allowed, in the interest of fairness, its own expert to rebut any evidence of Defendant's incompetence do not appear supported by Rule 5–602(B)(2)(a) (providing trial judge may rule solely on basis of defendant's mental evaluation). *Cf. State v. Owens,* 248 Kan. 273, 807 P.2d 101, 107 (1991) (recognizing Kansas statute as not requiring an adversarial proceeding as to a criminal defendant's competency). Rather, the State must show that the district court's disallowance of an "independent" evaluation by an expert chosen by the State was an abuse of discretion.

{30} At trial, the State summarily asserted two grounds in support of its motion for a second evaluation: (1) the original evaluation did not address "dangerousness"; and (2) if given the choice, the State would not have chosen Dr. Cave as its evaluator. Upon our review, we conclude that the district court

did not abuse its discretion in denying this motion.

{31} First, assuming arguendo that Dr. Cave failed to evaluate Defendant as to his "dangerousness," a conclusion not supported by the record, this alone would not mandate the provision of a second evaluation. Simply, whether or not a criminal defendant is "dangerous" does not alone bear upon whether he or she is competent to stand trial. "Dangerousness" is a consideration secondary to the initial determination of competency. *See* Rule 5–602(B)(3)(b). Therefore, merely alleging that a psychiatric evaluator has failed to inquire as to a criminal defendant's "dangerousness" does not *per se* render the original mental evaluation insufficient such that "good cause" exists for a second. *Cf. Letts,* 433 S.E.2d at 557 (requiring movant show both relevance and need in analogous context).

{32} Next, that the State would not have chosen Dr. Cave to perform the evaluation is of no moment to this Court. On appeal, the State repeatedly and variously refers to Dr. Cave as, for example, "the defense expert," alleging that she was biased in her evaluation and testimony. However, it adduced *no* corroboration below—nor on appeal—of this purported bias, and, indeed, our review of the record does not support the State's claim. The record indicates that Dr. Cave was selected by the New Mexico Department of Health, *not* Defendant, and that she was further selected as the court's expert, *not* Defendant's. Furthermore, despite the State's characterization of Dr. Cave's testimony, our review of the record reveals that she responded thoroughly and dispassionately to all questions regarding her opinion of Defendant's competency. While her testimony was not what the State wanted to hear, the State has failed to demonstrate that her opinions were tainted by inappropriate sympathies or bias. We, therefore, conclude that the trial court did not abuse its discretion in denying the State's request for a second evaluation.

## OTHER ISSUES

{33} The State appears to allege, or at least imply, additional grounds for error in the district court's denial of a second evaluation. For example, it argues that the court's ordering of the first evaluation was patently unfair due to the purported *ex parte* nature of Defendant's motion for and the court's order granting the original evaluation. Leaving aside for the moment that such an argument was not made below and is therefore unpreserved, the record makes abundantly clear that counsel for the State had actual, if not formal, notice that the evaluation had been moved for, ordered, and conducted. The question of Defendant's competency had been in the limelight since his arraignment. Moreover, it was the *State,* after receiving a copy of Dr. Cave's report, that moved the district court to set a date for a competency hearing. We find the State's argument on this point without merit.

{34} The State further alleges impropriety in that the district court's order authorizing Dr. Cave's evaluation stated that the evaluation was to be "confidential ... for the benefit of the defense on such issues as the defense specifically raises and believes are likely to be a significant factor in the defense." Again, we do not agree with the State's contention. First, as noted above, the State knew of Defendant's motion, the court's order, and Dr. Cave's administration of the mental competency evaluation. Despite this knowledge, the State made no objection and any complaint it might now articulate to this Court is, therefore, not preserved. Further, to the extent any impropriety could be inferred by the language of the court's order, the State sought appropriate relief below, and now on appeal, by challenging the district court's refusal to allow a second evaluation. We have addressed that argument above.

## CONCLUSION

{35} We affirm the district court's ruling that Defendant was not competent to stand trial and its denial of the State's request for a second psychological evaluation of Defendant.

{36} **IT IS SO ORDERED.**

PICKARD, C.J., and SUTIN, J., concur.