This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                        NO.  28,150

**WALTER MICHAELBACK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ernesto J. Romero, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Stephanie Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Following a grand jury indictment on a single count of breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981), Walter Michaelback (Defendant) entered a plea of no contest. After entering the plea, information was discovered by defense counsel, which suggested that Defendant was mentally retarded and was not capable of entering his plea knowingly, intelligently, or voluntarily. This appeal arises from the district court's denial of a motion to withdraw the plea and dismiss for competency and a subsequent denial of a motion to reconsider. We conclude that the uncontradicted evidence presented, combined with a misapplication of the law, requires dismissal.

**I.    BACKGROUND**

Following his indictment, defense counsel challenged Defendant's competency to stand trial. At some point before entering the plea, defense counsel received informal, verbal assurances from Dr. Moss Aubrey that, although Defendant was "on the cusp," he was probably competent to stand trial. The assessment was not a complete evaluation, no report was generated, and there was no reference to other evaluations that Defendant had undergone. Based on this assurance, defense counsel withdrew his challenge to Defendant's competency.

Defendant entered a plea before Judge Blackmer on April 7, 2006, for which he received a conditional discharge, probationary requirements, and an order to attend

and successfully complete mental health court. The district court engaged Defendant in a plea colloquy, reciting the nature of the charge, the rights that were being waived by entering the plea, and the possible sentence that Defendant faced. Defendant's overall responses to the district court were terse, but gave the appearance that he understood the court and the agreement. At the sentencing stage of the proceeding, defense counsel made the following statements:

> When I spoke with [Dr.] Aubrey, he indicated that he's just about on the cusp, so it could have gone either way, but he felt that at this time he's competent.
>
> I've spoken with him quite a bit and he seems to understand the consequences of what's happening and has been able to help me deal with this case and make decisions, so he's met the criteria. I don't think he's very high functioning, Your Honor, and I think the [c]ourt needs to take that into consideration, and [the State] understands, we've spoken several times about which way to go in this case. While [the State] is sympathetic to [Defendant's] special needs, we would ask for a conditional discharge.

Two months after entering the plea, defense counsel filed a motion to reconsider the sentence. At the hearing on the motion, Dr. James Harrington stated to the court that he knew Defendant in the context of his referral to the mental health court. As part of the initial evaluation process, Dr. Harrington conducted a background check in which he came across an earlier court file that indicated that Defendant had raised competency in 2004 in another proceeding. Daniel Seagrave, the doctor who had performed the evaluation in that proceeding, concluded that Defendant was not

competent. The charges were ultimately dismissed in that case because of competency. Dr. Harrington informed the court that, although he had not conducted a formal evaluation prior to the hearing, it was his conclusion based on his interactions with Defendant, as well as consideration of the previous determination, Defendant (1) did not qualify for mental health court, (2) did not understand the charge of breaking and entering, and (3) was not competent based on his preliminary assessment and opinions that were consistent with the previous diagnosis of Dr. Seagrave, which actually evaluated Defendant's intellectual level. At the conclusion of the hearing, defense counsel stated that given the information that he now had, it was his opinion that Defendant could not have entered a knowing plea agreement and, to that extent, defense counsel had provided ineffective assistance. The court suggested further assessment of Defendant and, during the interim, that Defendant file a formal motion to withdraw his plea, which would allow the court to have jurisdiction in the matter. Moreover, the court ordered that Dr. Seagrave's evaluation report on Defendant's previous case be "unsealed" for defense and prosecution review.

Defendant filed his motion to withdraw the plea that was later amended to include a request to dismiss for competency. Two weeks before Defendant filed his motion, he was indicted in an unrelated case on burglary, larceny, and tampering with evidence charges. This third case was assigned to Judge Martinez and is not the

subject of this appeal. However, it is apparent from the record that competency was challenged pretrial and that Dr. Aubrey was assigned to conduct the competency evaluation. Dr. Aubrey conducted a full evaluation in September 2006 and, following a competency hearing, Judge Martinez dismissed the third case in December, concluding that "Defendant is mentally retarded as defined by [NMSA 1978, Section 31-9-1.6 (1999)] and is not competent to stand trial."

In the instant case, Judge Blackmer retired before a competency evaluation was conducted. The case was reassigned to Judge Romero and, following Dr. Harrington's completion of a competency evaluation in August 2006, a hearing was held on Defendant's motion to withdraw the plea and dismiss for competency. The hearing was held in the month following Judge Martinez's judicial determination and dismissal of the third case. Dr. Harrington was the only witness in the immediate case, and he testified that Defendant had a full-scale IQ of 57. In addition, he testified that when an individual tests at this level of intellectual capacity, competency comes into question. Dr. Harrington's opinion was that Defendant (1) showed little understanding of the meaning and consequences of the charge against him, (2) was unable to assist in his own defense, and (3) could not explain what the terms "not guilty" or right to "remain silent" meant. Because Defendant's condition impacted his ability to understand, consult, make intelligent decisions, and that the condition was

permanent and "had existed for a long time," it was Dr. Harrington's conclusion that Defendant was not competent, nor was he competent when he entered his plea. Defendant's history indicated he had been in special education classes in high school. Dr. Harrington stated:

> [T]here's a distinct tendency for people -- for example, who have been in special ed[ucation] classes . . . a real distinct tendency in that population for them to say that they understand things when they really don't. And I think [Defendant] was no different there. He will tell you he understands, when he doesn't. It's an attempt to try to fit in and it's not an attempt to malinger or anything like that. It's just an attempt to please. So when people say they understand what's going on, they frequently say they do, when they don't. And that was the situation with [Defendant].

## II. DISCUSSION

On appeal, Defendant asserts that because he was not capable of entering into his plea knowingly or voluntarily, the district court abused its discretion in not allowing him to withdraw his plea. We conclude that the uncontradicted evidence presented at the hearing, in concert with the district court's misapplication of the law, necessitates reversal.

Our courts have previously contemplated the standard of review within the context of withdrawing a plea. A district court's order on a defense motion to withdraw a guilty plea is reviewed for an abuse of discretion. *State v. Herrera*, 2001-NMCA-073, ¶ 7, 131 N.M. 22, 33 P.3d 22. However, leave should be granted

6

to withdraw a post-sentence plea whenever it appears that the withdrawal is necessary to correct a manifest injustice or error. *Id.*; *State v. Hunter*, 2005-NMCA-089, ¶¶ 20, 28, 138 N.M. 96, 117 P.3d 254 (noting that courts abuse their discretion when they are "shown to have acted unfairly, arbitrarily, or committed manifest error" (internal quotation marks and citation omitted)). In *Hunter*, this Court observed that it would be a manifest injustice to allow a post-sentence plea to remain in effect if (1) the plea was not ratified by the defendant, (2) the plea was not voluntary, or (3) effective counsel was denied. *Id.* ¶¶ 21, 22. Defendant's claim that he was not competent to enter his plea is equivalent to claiming that his plea was not voluntary.

The standard to determine competency to enter a guilty plea is the same as the standard to determine competency to stand trial. *State v. Lucas*, 110 N.M. 272, 275, 794 P.2d 1201, 1204 (Ct. App. 1990). A defendant is considered "competent to stand trial if he understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." *State v. Garcia*, 2000-NMCA-014, ¶ 20, 128 N.M. 721, 998 P.2d 186 (internal quotation marks and citation omitted.); *see* UJI 14-5104 NMRA. It is typically "the defendant's burden to demonstrate incompetency by a preponderance of the evidence." *Garcia*, 2000-NMCA-014, ¶ 20. This Court likewise reviews a district court's determination of competency for an abuse of discretion. *State v. Duarte*, 1996-NMCA-038, ¶ 15,

121 N.M. 553, 915 P.2d 309. However, even when the standard of review is an abuse of discretion, "[this Court] review[s] the application of the law to the facts de novo." *Becenti v. Becenti*, 2004-NMCA-091, ¶ 6, 136 N.M. 124, 94 P.3d 867 (internal quotation marks and citation omitted).

The capability of understanding proceedings and having the ability of making a rational defense is fundamental within our judicial system. "[I]t is a violation of due process to prosecute a defendant who is incompetent to stand trial." *State v. Rotherham*, 1996-NMSC-048, 122 N.M. 246, 252, 923 P.2d 1131, 1137. Aside from simply understanding the gravity and meaning of the proceedings, "[a]n accused must have the capacity to assist in his own defense and to comprehend the reasons for punishment." *Id.* Individuals are simply not competent if they are incapable of appreciating their peril. *See id.* It would therefore be a manifest injustice if Defendant entered a plea when he was not capable of entering it voluntarily, and the injustice would be perpetuated if the legal system would not allow him to withdraw it.

The district court's order denying Defendant's motion made the following relevant findings:

4. In June[] 2006[,] [D]efendant was indicted for [b]urglary in CR[]2006-2783 [third case], assigned to [Judge] Martinez.

5. On December 12, 2006[,] before an adjudication in CR 2006-2783, [Judge] Martinez pursuant to [Section] 31-9-1.6, . . .

8

dismissed the [i]ndictment without prejudice, on evidence of [D]efendant's incompetence and mental retardation.

6.  Dr. Harrington, a licensed clinical psychologist, conducted a mental evaluation of [D]efendant in September[] 2006 and testified that [D]efendant lacked the mental capacity to assist in his defense and suffers from mild retardation. According to Dr. Harrington, more likely than not, [D]efendant was incompetent in April[] 2006 when he entered the [p]lea and [d]isposition [a]greement and changed his plea in CR 2005-03963 [immediate case].

7.  The April 7, 2006 transcript of proceedings before [Judge] Blackmer is attached as Exhibit "A[."] [Defense counsel] represented [m]ovant when the [p]lea and [d]isposition [a]greement and nolo plea were entered. [Defense counsel] informed Judge Blackmer that although he had raised the issue of [D]efendant's lack of mental capacity, he was withdrawing his ex parte motion because [D]efendant knew and understood everything in the plea agreement . . . . [Defense counsel] related that he had conferred with Dr. Moss Aubrey, . . . who opined that [D]efendant was competent.

(Emphasis omitted.)

The following relevant conclusions were also made by the district court:

(1)[]  Defendant has failed to meet his burden of proof that on April 7, 2006, he lacked the capacity to enter the plea of *nolo contendare*.

(2)  [Section] 31-9-1.6 . . . is inapplicable because it pertains to pre-adjudicatory, as opposed to post-adjudicatory, mental incapacity. In the latter category, the applicable statute is [NMSA 1978, Section 31-9-4 (1982).]

The district court attached to the order as "Exhibit A," a transcript of the entire proceeding before Judge Blackmer where Defendant entered his plea. The State

argues that the evidence presented supports the district court's decision and that Defendant has simply failed to carry his burden.

We begin our analysis by agreeing with a discrete point that the State makes in its brief. Citing *State v. Rael*, the State argues that a demonstration of mental retardation is a different focus than a demonstration of competency to stand trial. 2008-NMCA-067, ¶ 7, 144 N.M. 170, 184 P.3d 1064. We agree, and Dr. Harrington's testimony at the hearing supports this proposition. Specifically, Dr. Harrington stated that it is possible for an individual to have an IQ lower than 70 and still be competent to stand trial. However, "the lower it gets, especially IQs in the 50s, . . . those individuals tend not to be competent." *Compare* § 31-9-1.6(E) (presuming mental retardation on individuals with an intelligence quotient of seventy or below), *with Rael*, 2008-NMCA-067, ¶ 7 ("[W]e are not aware of any statutory or case law that directs that a person found to have mild mental retardation is necessarily incompetent to stand trial.").

The specific question this Court must answer is whether the evidence presented allowed the district court to conclude that Defendant understood the nature and significance of the proceedings, had a factual understanding of the charges, and was able to assist his attorney in a defense. UJI 14-5104; *Garcia*, 2000-NMCA-014, ¶ 20.

Although our review of the record raises concerns about the showing of evidence for each one of these requirements, we find it necessary to address only one.

In Dr. Harrington's report and testimony, the point was made that Defendant showed little understanding of the meaning, consequences, or proceedings involved in this case. During the evaluation when asked what being charged with a crime meant, Defendant stated that he thought that because he had been charged, he had already been found guilty. When asked what would happen if a defendant was found not guilty, Defendant responded that he would be released. Moreover, after spending 233 days in presentence confinement and then being released to pretrial services, Defendant stated that it meant that he had been found not guilty. Dr. Harrington noted the contradiction between Defendant's statements that he had been found guilty because he was charged, and then he was found not guilty because he was released, which demonstrated to Dr. Harrington that Defendant was "clearly confused." Dr. Harrington's testimony was that Defendant's "level of intellectual functioning was significantly low enough that [Defendant did not have] the ability to understand the proceedings." To the extent that the State argues that Dr. Harrington's testimony and report established that Defendant had some understanding of the nature and significance of the criminal proceedings, we disagree. Dr. Harrington believed that Defendant had a basic understanding that a criminal proceeding was an adversarial

11

process, but his understanding was limited. The testimony established that Defendant had a "cognizant inability to understand the nature of the role of the proceedings" that Defendant did not know if he had been found innocent or guilty of the charge.

We now turn to the State's argument that the district court reviewed the transcript of the plea proceedings before Judge Blackmer, and the fact that Judge Romero attached the transcript to his order denying Defendant's withdrawal of the plea. Rule 5-303(E), (F) NMRA (amended 2006) requires a district court to address a defendant personally in open court and inform as well as determine whether the defendant understands the nature of the charges, the possible penalties, and the defendant's rights. Judge Blackmer adhered to Rule 5-303 in accepting the plea. Although Judge Blackmer stated at the hearing to reconsider the sentence that he "did recognize [Defendant] was a little slow," Defendant gave affirmative responses at the plea hearing when questioned about his understanding. Further, defense counsel asserted that Defendant understood the proceedings and withdrew the challenge to competency. However, these facts do not strike us as compelling.

First, "assertions . . . of counsel are not evidence." *Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (filed 2008). This Court has previously held that a defense counsel's "observations and opinions alone cannot trigger reasonable doubt about [a] defendant's competency." *State v. Flores*,

2005-NMCA-135, ¶ 29, 138 N.M. 636, 124 P.3d 1175. This is because the assertions and observations of counsel "must be substantiated." *Id.* ¶ 28.

Second, due process requires that "a guilty plea be made voluntarily and intelligently." *State v. Lucero*, 97 N.M. 346, 352, 639 P.2d 1200, 1206 (Ct. App. 1981). A defendant cannot voluntarily and intelligently respond to circumstances when he lacks the capacity to understand the proceedings. The philosophy behind any party being allowed to raise competency at any time during the course of the proceedings embraces the notion that a defendant cannot be validly tried or enter a plea while incompetent. *See* NMSA 1978, § 31-9-1 (1993); *State v. Chapman,* 101 N.M. 478, 483, 684 P.2d 1143, 1148 (1984); *State v. Tartaglia*, 80 N.M. 788, 790, 461 P.2d 921, 923 (Ct. App. 1969). "If one is mentally incompetent, then, by definition, he cannot be expected to raise that contention before the trial court and thus cannot be prejudiced by his failure to do so." *State v. Guy*, 79 N.M. 128, 130, 440 P.2d 803, 805 (Ct. App. 1968) (internal quotation marks and citation omitted). In this particular case, the district court's findings and conclusions do not indicate that Defendant's statements were relied upon. To the extent that the district court did rely on a transcript of Defendant's statements of "[y]es" and "a little bit" in response to Judge Blackmer's questions as to whether Defendant understood the proceedings, we conclude that such reliance was not in accord with the law. In light of the specific

expert testimony and the principle that a defendant cannot be expected to raise his own incompetence, we conclude it would result in an unfair and arbitrary abuse of discretion that would create a manifest error if the district court were to rely on a transcript of Defendant's responses.

The only testimony concerning Defendant's understanding of the proceedings came from Dr. Harrington. The testimony, if believed, required a finding that Defendant did not understand the proceedings sufficiently to be determined competent to enter a plea. Although the district court was not required to believe the testimony, we presume that it did so because the testimony was uncontradicted, the court failed to set forth a reason for disbelieving it, and Finding Number 6 of the court's order denying the motion to withdraw the plea indicates that the court believed Dr. Harrington's testimony, which was set out affirmatively in the findings.

As a general rule, on review, we indulge in reasonable presumptions that support the district court's ruling. *State v. Gonzales*, 1999-NMCA-027, ¶ 15, 126 N.M. 742, 975 P.2d 355 (filed 1998). However, this Court "will not presume that the district court has rejected uncontradicted testimony." *Id.* ¶ 16. When a district court does reject uncontradicted testimony, it should "indicate in the record the reasons" for doing so. *Id.* (internal quotation marks and citation omitted).

As outlined above, Dr. Harrington was the only witness. His testimony established that Defendant did not understand the proceedings. Likewise, the district court did not state verbally or in its order that it was rejecting Dr. Harrington's testimony. The order denying the motion to withdraw the plea states, in pertinent part: "[Section] 31-9-1.6 . . . is inapplicable because it pertains to pre-adjudicatory, as opposed to post-adjudicatory, mental incapacity. In the latter category, the applicable statute is [Section] 31-9-4."

Section 31-9-1.6 pertains to mental retardation and the likelihood that an individual will become competent following a determination of incompetence. Further, hearings pursuant to Section 31-9-1.6 inquire as to whether individuals are likely to harm themselves or others. If there is an indication of an individual's likelihood of causing future harm to themselves or others, Section 31-9-1.6 mandates the initiation of civil commitment proceedings pursuant to NMSA 1978, Section 43-1-1 (1999). Alternatively, Section 31-9-4 focuses on sentences that a defendant may receive if he is determined to be guilty, but mentally ill, or upon acceptance of a plea. From the district court's conclusions that Section 31-9-1.6 was inapplicable because it pertained to pre-adjudicatory incapacity, and Section 31-9-4 was applicable and pertained to post-adjudicatory capacity, we infer that the district court believed Dr. Harrington's testimony, however, mistakenly conflated the terms "mentally ill" and

"mentally retarded." The district court's confusion on this point is underscored by the following interaction that occurred at the hearing:

COURT: Okay. I have a question I would like both of you to comment on. Is there a difference between incompetency at the time of the plea and incompetency that arises after the plea and after the sentence? If so, what is it?

[DEFENSE COUNSEL]: There is not a difference, Your Honor. In specifically talking about [Defendant], Dr. Harrington's testimony was clear that [Defendant] has a longstanding, organic mental health issue. He was mentally retarded prior to the plea. He was mentally retarded during the plea. He is mentally retarded today.

COURT: Does that mean, [defense counsel], that mentally retarded people have a stay-out-of-jail pass? That they could commit crimes --

[DEFENSE COUNSEL]: Your Honor, I'm not --

COURT: -- and not be held accountable?

[DEFENSE COUNSEL]: Your Honor, the State -- the [L]egislature has given the [c]ourt a statute, has given the [c]ourt a mandate as to finding of mental retardation and that is how the [c]ourt needs to find. I'm not going to get into a philosophical discussion, Your Honor, as to what --

16

COURT: I'm not asking you to philosophize. I'm asking you to show me a statute that says mental -- people with mental retardation cannot be held accountable for the crime they commit.

[DEFENSE COUNSEL]: There are mechanisms set out by the [L]egislature of which the [c]ourt -- of which the [L]egislature has given this [c]ourt jurisdiction --

COURT: Well, how about sharing that statute with me.

[DEFENSE COUNSEL]: Your Honor, [Section] 31-9-1.6 is the statute for mental retardation. A civil commitment statute the State may proceed on, I do not have the citation for that. That is a completely separate proceeding, separate from this [c]ourt's jurisdiction, Your Honor.

The [L]egislature has given us those -- this statute. And my motion is under [Section 31-9-]1.6, Your Honor. And that is the relevant statute that lays out specifically what the evidence is, Your Honor, and what the evidence is that the [c]ourt has to do X. The civil commitment statute is under the mental health and disability, Your Honor, but that would be a separate proceeding, and the State has not filed that.

COURT: How do you explain [NMSA 1978, Section 31-9-3(A) (1982)] that reads as follows: I'm quoting it to you.

17

Quote[:] "A person who at the time of the commission of a criminal offense was not insane but was suffering from a mental illness is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill."

In the instant case, the question before the district court was whether Defendant was capable of entering a plea knowingly, intelligently, and voluntarily. This is a different focus than whether a disorder afflicted

a person *at the time of the commission of the offense* and which impaired that person's judgment, but not to the extent that he did not know what he was doing or understand the consequences of his act or did not know that his act was wrong or could not prevent himself from committing the act.

§ 31-9-3(A) (emphasis added). The district court's statements demonstrate its confusion. By concluding in its order that a defendant could enter a plea and serve a sentence even though the defendant is mentally ill, the district court demonstrated its confusion regarding Dr. Harrington's testimony. However, the district court's conclusion fails to answer the first question—whether Defendant could knowingly enter the plea—as opposed to whether defendants who are mentally ill may have sentences imposed upon them after they have entered a plea or have been found guilty. *See* §§ 31-9-3, -4.

**III.    CONCLUSION**

We reverse the district court's denial of Defendant's motion to withdraw his plea and remand this case for further proceedings not inconsistent with this Opinion.

**IT IS SO ORDERED.**


_____
**ROBERT E. ROBLES, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**