This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                    **No. 31,054**

**JUDY CASTILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1} Defendant appeals from the district court's order revoking her probation and sentencing her to nine years in the Department of Corrections, 1825 days of which she was required to serve in actual imprisonment. On appeal, Defendant argues that the district court erred by ruling that she was competent to stand trial. We agree. Accordingly, we reverse the district court and remand for proceedings consistent with Rule 5-602(D) NMRA.

**BACKGROUND**

{2} In the district court, five of Defendant's criminal cases were consolidated for competency proceeding purposes after Defendant raised the issue by motion. An expert was appointed to evaluate Defendant's competence and submitted a report to the court on July 28, 2010. The expert, Dr. Vickie Bulling, testified at the August 17, 2010, competency hearing that Defendant was not competent to stand trial at the time of Defendant's evaluation, which was nearly two months before the competency hearing. Dr. Bulling had conducted over 1800 forensic evaluations, was under a New Mexico Department of Health contract with the court, and was employed at the Colorado State Mental Health Institute in Pueblo, Colorado. The district court found, and the parties stipulated, that Dr. Bulling was a qualified expert in the field of

forensic psychological evaluations. Dr. Bulling interviewed Defendant and administered numerous forensic psychological tests for three hours, which Dr. Bulling testified were nationally recognized as the "best practices" instruments for determining competency to proceed in criminal cases. Dr. Bulling testified that she had a diagnostic impression of psychosis, thought disorder, post-traumatic stress disorder, and dysphoria.

{3} Dr. Bulling offered a detailed explanation for her conclusions. Dr. Bulling noted that Defendant was highly distractible, tended to perseverate, tended to ramble, and required frequent redirection. Defendant reported hearing voices, and she had a name for the entity that spoke to her. Dr. Bulling was unable to administer some tests. Dr. Bulling stated that Defendant's post-traumatic stress disorder stemmed from the extreme violence to which Defendant was subjected as a child at the hands of her father, who beat her mother to the point of brain damage, causing her to be a quadriplegic. She left home at age nine, relying on her sister while living on the street before her sister was murdered.

{4} Dr. Bulling testified that Defendant had poor insight into her mental illness, denied having any mental illness, and exhibited no signs of malingering after administering three tests designed to detect malingering. Dr. Bulling testified that competency and mental illness are fluid and change over time, and therefore, it is not

3

uncommon for people who have been previously represented by counsel in criminal proceedings to be found incompetent later in subsequent criminal proceedings. She stated that it would be difficult for Defendant to communicate with her attorney while experiencing psychosis.

{5} A second psychologist, Dr. James Harrington, also testified. He had conducted a program suitability interview with Defendant in February 2010—six months before the competency hearing—while working for the district court mental health court. During the interview, Defendant appeared to be addressing an imaginary person, who she said protects her and gives her commands. Dr. Harrington stated that his clinical impression was that Defendant showed signs of a psychotic disorder, including hallucinations. This doctor also detected no evidence of malingering. Dr. Harrington also stated that Defendant did not bring attention to her mental illness on her own accord at all. Dr. Harrington was not asked at the time of the interview to evaluate Defendant's competency and therefore offered no opinion on that matter.

{6} The State offered the brief testimony of two of Defendant's former attorneys, one who had represented Defendant in 2008, and another in August 2009, a year before the competency hearing. Each testified that they entered pleas on Defendant's behalf, and that it is their practice not to enter pleas if a defendant appears incompetent. The State also relied on an undated letter purportedly written by

4

Defendant to the district court judge, asking for inpatient care. When confronted with this letter, Dr. Bulling agreed that it was not consistent with her test results, which showed a third grade reading level.

{7}     The district court judge accepted Dr. Bulling as an expert and seemed to acknowledge the reliability of the tests performed. In its findings and conclusions, the district court emphasized that Dr. Bulling's diagnosis and evaluation were relevant only to Defendant's state at the time of the evaluation, not the competency hearing held two months later. The district court's findings about Defendant's competence, however, focused on the fact that Defendant's previous attorneys encouraged her to enter plea agreements without raising the issue of competency. The district court found it relevant and important that Defendant did not seem incompetent during a plea agreement hearing in 2008 or in 2009. The district court also noted that defense counsel did not raise competency at a hearing in January or March of 2010, six and three months, respectively, before the psychiatric evaluation. The district court relied on its own observations of the letter it had received from Defendant prior to probation violation hearing in January 2010, seven months before the competency hearing, in which Defendant used language the district court described as "collegiate" and which the court found "indicate[d] . . . Defendant has a clear understanding of the potential penalties she is facing and the role of the [district c]ourt."

**{8}** The district court also questioned the expert's diagnosis on grounds that the tests require self-reporting and the expert "made little to no effort to substantiate any of . . . Defendant's representations." The district court also stated that the lack of support for Defendant's incompetence at the time of the hearing was particularly troubling because it was Dr. Bulling's opinion that Defendant had gone undiagnosed and untreated for many years. Accordingly, the district court ruled against Defendant on the competency claim.

**STANDARD OF REVIEW**

**{9}** Defendant maintains that we should apply a de novo standard of review, or a mixed standard of review that would be less deferential than abuse of discretion. However, the standard is well-settled. The defendant has the burden of proving that he or she is incompetent by a preponderance of the evidence. *See State v. Chavez*, 2008-NMSC-001, ¶ 11, 143 N.M. 205, 174 P.3d 988. "Preponderance of the evidence simply means the greater weight of the evidence[.]" *Campbell v. Campbell*, 1957-NMSC-001, ¶ 24, 62 N.M. 330, 310 P.2d 266. On appeal, we review a district court's competency determination for abuse of discretion. *See State v. Rael*, 2008-NMCA-067, ¶ 6, 144 N.M. 170, 184 P.3d 1064; *State v. Garcia*, 2000-NMCA-014, ¶ 20, 128 N.M. 721, 998 P.2d 186. Of course, in considering the court's exercise

6

of discretion, we view its ruling in the context of the statutory framework governing competency and the evidence that resulted from mandated evaluation.

**DISCUSSION**

{10}     The State's primary argument is that the district court was free to reject Dr. Bulling's testimony.  Although obviously the district court makes the ultimate determination regarding competency and may reject an expert opinion, its rejection must be based on a sound rationale. *See State v. Gonzales*, 2001-NMCA-025, ¶ 40, 130 N.M. 341, 24 P.3d 776, *overruled on other grounds by State v. Rudy B.*, 2009-NMCA-104, 147 N.M. 45, 216 P.3d 810 (stating that a fact finder is free to reject expert testimony); *Rael*, 2008-NMCA-067, ¶ 6 (stating that "[a] district court abuses its discretion when its ruling [as to competency] is clearly against the logic and effect of the facts and circumstances of the case" (internal quotation marks and citation omitted)).  We note that the New Mexico Mental Illness and Competency Code (NMMIC) places great emphasis on the opinion of the expert.  Under the NMMIC, proceedings must be suspended when there is a valid question as to the defendant's competency.  *See* NMSA 1978, § 31-9-1 (1993).  The statute does not require a showing of a pattern of behavior indicating incompetency for a question to arise. When a question arises,  the defendant must be professionally evaluated by an expert whose report is submitted to the district court for a hearing on it.  NMSA 1978, § 31-

9-1.1 (1993). The competency hearing must be held within a reasonable time, "but in no event later than thirty days after notification to the court of completion of the diagnostic evaluation." *Id.* The statute does not indicate that the expert is an advocate or a witness for the defense to be rebutted by a professional hired by the State. Instead, it calls for a single expert to be an independent professional regarding the defendant's competency. Clearly, the NMMIC contemplates the primacy of the expert's opinion and makes that opinion time-sensitive for the district court to determine competency.

{11} We conclude that the factors relied on by the district court were not sufficient to undermine the expert evaluation that was conducted pursuant to the "best practices" used by experts for determining competency. The district court rejected the expert's evaluation on grounds that question the nature of such psychiatric evaluations and would apply to nearly any psychiatric evaluation. For instance, although the State contends that the district court believed that Dr. Bulling relied too heavily on information provided by Defendant without verifying the information, we note that this challenges Dr. Bulling's methodology, which she testified employed a "best practices" approach to determining Defendant's competency. In addition, although the evaluations rely on self-reporting, they can be buttressed with testing to detect malingering, as took place here. Also, nothing seems to underlie the district court's

8

findings that contradict Dr. Bulling's or Dr. Harrington's observations that Defendant was not malingering and had no insight into her mental illness, even to the point of denying it. The district court's misgivings about Dr. Bulling's opinion that Defendant has gone undiagnosed and untreated is a problem that will always result whenever a mental illness concern arises and calls for a competency hearing and psychiatric evaluation.

{12}     The district court's reasoning as to the timing of the evaluation is also suspect. The district court replaced the expertise of both experts and particularly that of Dr. Bulling with its own opinion of Defendant's letter, which the court received at least seven months before the competency hearing. Likewise, the events involving Defendant's previous attorneys occurred one and two years before the hearing, respectively. *Cf. State v. Flores*, 2005-NMCA-135, ¶ 29, 138 N.M. 636, 124 P.3d 1175 (stating that "a court may consider defense counsel's observations and opinions, but that those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency"). Given the district court's acceptance that mental illness is fluid, it seems illogical for the district court to reject Dr. Bulling's evaluation on grounds of timing by itself relying on events that occurred well before the psychiatric evaluation. Finally, if the court was concerned that Dr. Bulling's evaluation had taken place two months prior to the hearing and therefore was stale

information, the better remedy to any timeliness problem would have been a new evaluation instead of minimizing Dr. Bulling's conclusion.

{13} As the State observes, the New Mexico Supreme Court has affirmed a district court's rejection of expert testimony regarding a defendant's competence, even where it was compelling. *See State v. Jason F.*, 1998-NMSC-010, ¶ 29, 125 N.M. 111, 957 P.2d 1145. However, the Supreme Court so decided under very distinct circumstances. In *Jason F.*, at issue was the defendant's competence to confess, which was one moment in time, and there was a video-taped confession, which the district court viewed for itself. *Id.* ¶¶ 22-29. The experts, who did not view the video-taped confession, relied on the defendant's self-report that he was intoxicated at the time of his confession to determine that the defendant was not competent to confess. *Id.* ¶¶ 25-26. The experts stated that their opinion as to the defendant's competency might have changed had they viewed the video-taped confession. *Id.* ¶ 6. Also, the detective who questioned the defendant and took his confession testified that the defendant did not appear to be intoxicated, he understood the nature of the accusations against him, and was able to recall the alleged crimes and many details surrounding the incidents. *Id.* ¶ 27. The district court's own observations about the video-taped confession mirrored that of the detective. *Id.* ¶ 28. The Supreme Court held that "it was within the children's court's discretion to reject the expert testimony in light of

10

[the detective's] testimony of his personal observations of [the defendant] at the time of the confession, and in light of the taped confession itself." *Id.* ¶ 29. *Jason F.* is inapposite to the current case because here nothing suggests that the district court rejected the expert opinion based on observations of Defendant at the time the competency tests were administered.

{14}     The State argues that the district court's rationale is supported by several other considerations. We find these arguments unpersuasive. First, the State refers to prior criminal proceedings where competency was not raised. We do not believe this is relevant to the issue of whether Defendant was competent for this particular proceeding. As noted, Dr. Bulling testified that mental illness is fluid  and that Defendant's prior criminal proceedings would not affect her conclusion that Defendant was not competent. Second, Dr. Bulling's testimony specifically stated her opinion that Defendant's condition had been undiagnosed for a long time. Third, the State questions Defendant's motive for pursuing the competency evaluation, noting that she did not request it until she had been denied the option of special mental health treatment. This consideration seems too speculative to form a rational basis for rejecting the expert malingering tests employed by Dr. Bulling.

{15}     Finally, the State claims the district court judge could make his own determination based on his observation of Defendant and consideration of a letter that

11

Defendant allegedly wrote some seven months earlier. With respect to the former, we do not believe that the expert evaluation can be nullified by the generalized in-court observations discussed above. Otherwise, a district court might never be overruled on a competency issue because it would be free to substitute its observations over the statutorily-mandated expert evaluation. The latter claim is also highly suspect. The district court relied on the letter to find that "Defendant was malingering during the evaluation period." But, given that the letter was written at least seven months earlier, this finding is inconsistent with the district court's disparagement of the expert's June 22, 2010 evaluation because it did not demonstrate incompetence on the day of the hearing two months later.

**CONCLUSION**

{16}    We conclude that the district court's ruling that Defendant was competent was not supported by substantial evidence and was clearly against the logic and effect of the facts and circumstances before it. We therefore reverse the district court and remand for proceedings consistent with Rule 5-602(D).

12

{18}     **IT IS SO ORDERED.**


_____
                              **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**CYNTHIA A. FRY, Judge**