This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:  May 26, 2016**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                             NO.  S-1-SC-35052

**TELYITH KADEEM FONTAYNE HOPKINS,**

Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R.  Loveless, District Judge**


Hector H. Balderas, Attorney General
Jane A. Bernstein, Assistant Attorney General
Santa Fe, NM

for Appellee


Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**DECISION**

**MAES, Justice.**

{1}    Telyith Kadeem Fontayne Hopkins (Defendant) pleaded guilty to murdering Ramona Montoya-Leon and Arthur Garcia. At the time Defendant committed these murders he was twenty-one years old. The district court sentenced Defendant to two life sentences, to be served consecutively.  Defendant filed a motion to modify his sentence pursuant to Rule 5-801 NMRA (2009) on the ground that the consecutive sentences violate state and federal due process guarantees and prohibitions against cruel and unusual punishment in light of Defendant's young age and mental health issues. *See* U.S. Const. amend. VIII; *id.* amend. XIV, § 1; N.M. Const. art. II, §§ 13, 18.  The district court denied Defendant's motion.

{2}    In his direct appeal to this Court, Defendant raises the following issues: (1) whether sentencing him to two consecutive life sentences is tantamount to a life sentence without parole and is cruel and unusual punishment; (2) whether felony murder is unconstitutional when applied to the severely mentally ill; and (3) whether due process demands heightened protections for the mentally ill.  We affirm the

district court's sentence and denial of Defendant's motion. Because Defendant raises no questions of law that New Mexico precedent does not already sufficiently address, we issue this nonprecedential decision pursuant to Rule 12-405(B)(1) NMRA.

## I.     FACTS AND PROCEDURAL HISTORY

## A.     Defendant's Competency

**{3}**     Concerned about Defendant's need for twenty-four-hour surveillance at the Metropolitan Detention Center (MDC), his inability to understand the charges against him, and his incoherent, irrational and possibly delusional behavior, defense counsel filed a motion to determine competency before trial. Dr. Susan Cave, an expert Defendant retained, performed an evaluation and concluded that Defendant was incompetent to stand trial. On July 9, 2012, the district court found Defendant incompetent to stand trial, stayed the proceedings against Defendant, and committed Defendant to the New Mexico Behavioral Health Institute at Las Vegas, NM (NMBHI) for treatment. Defendant was treated and based upon an April 2013, report from NMBHI, the district court found Defendant competent to stand trial.

**{4}**     On August 1, 2013, when the district court lifted the order staying the proceedings, Defendant expressed a desire to enter a guilty plea. Soon after that, however, Dr. J. Hamilton, Defendant's treating physician, informed defense counsel

2

that he believed Defendant could not enter a voluntary plea in light of his ongoing psychosis and reported delusional status. Subsequently, Dr. Cave, Defendant's original psychiatrist, consulted with Dr. Hamilton. Defense counsel and Dr. Cave also met extensively with Defendant, and discussed the proposed plea agreement at great length. In a November 6, 2013, letter to the district court, Dr. Cave indicated her opinion that Defendant was in fact competent to enter a plea, based in part on her consultation with Dr. Hamilton. The district court accepted that evidence and permitted Defendant to plead guilty. Thereafter, Defendant entered into a plea and disposition agreement.

**B.      Defendant's Plea Agreement and Sentence**

{5}      In the plea agreement, Defendant agreed to plead guilty to the first-degree felony murder of Romana Montoya-Leon and the first-degree willful and deliberate murder of Arthur Garcia. The State agreed to dismiss the remaining counts of the indictment. The plea and disposition agreement contained "no agreements as to sentencing" and stated the maximum penalty for each count of murder in the first degree to be life imprisonment. Pursuant to the plea agreement, Defendant expressly waived "all motions, defenses, objections, or requests" with respect to the district court's entry of a judgment and the right to appeal imposition of a sentence consistent

3

with the plea agreement. The plea agreement also provided that "Defendant withdraws any challenge to his competency to stand trial, and Defendant is competent to enter this plea. Defendant . . . acknowledge[s] that he is giving up any rights asserted in those [previously filed] motions, . . . and acknowledges his waiver of any and all defenses."

{6}     At the plea hearing, the district court advised Defendant of the consequences of his plea, confirmed Defendant's understanding that there was no agreement as to sentencing and that Defendant was giving up his constitutional rights and waiving defenses, including the pending motion to suppress. Defense counsel stated his belief that the plea was in Defendant's best interest. The district court found Defendant competent to enter the plea based on the reports from NMBHI and Dr. Cave, that Defendant's guilty plea was knowing, intelligent and voluntary and accepted his guilty plea, and adjudged him guilty.

{7}     At the sentencing hearing, the district court again reviewed the evidence and took account of Defendant's age and his mental illness. The district court concluded that when Defendant committed these murders he was aware that his actions were wrong because he took efforts to conceal his crimes, he lied to the police, he hid evidence, and he destroyed his clothing in an attempt to prevent apprehension. The

4

district court further found that Defendant posed a danger to society, based on the "extremely brutal" nature of the crimes. The district court sentenced Defendant to two consecutive life sentences, so that Defendant would serve a "total of Sixty (60) years in prison before" becoming eligible for parole.

**C.     Defendant's Motion to Modify the Sentence**

{8}     After sentencing, Defendant filed a motion to modify sentence pursuant to Rule 5-801 NMRA (2009), claiming that the consecutive sentences imposed violated state and federal due process guarantees and prohibitions against cruel and unusual punishment in light of Defendant's mental illness and young age at the time of the crime. *See* U.S. Const. amend. VIII; *id.* amend. XIV, § 1; N.M. Const. art. II, §§ 13, 18. At a subsequent hearing, Defendant argued that modification of his sentence was appropriate because at the time he committed these crimes he may not "have had the capacity to form the specific intent to commit first-degree murder." Dr. Cave, who had one year earlier assured the district court that Defendant was competent to plead guilty, suggested that Defendant may not have been able to control himself when he committed the two murders and did not fully appreciate the meaning of consecutive life sentences. Nonetheless, Dr. Cave explained, it was "fairly certain" Defendant would have additional psychotic episodes in the future and would require medication.

Defendant also argued that he effectively received a life sentence without the possibility of parole, since he will be eighty-one years old before becoming eligible for parole. The consecutive sentences, Defendant argued, were cruel and unusual punishment because, he claimed, he had been unable to fully appreciate what he had done, almost as if he was a child or a mentally retarded person. Defendant further argued that the felony murder statutes, as applied to the mentally ill, were unconstitutional and that due process required heightened protections for mentally ill persons like himself.

{9} In response, the State argued that Defendant had waived any challenge to specific intent based on age or mental health in the plea agreement and that leniency was not otherwise warranted since Defendant was an adult and was found to be competent. The State also argued that Defendant would have a high risk of reoffending upon release if his sentences were ordered to run concurrently.

{10} The district court held that the Eighth Amendment cases were not applicable because Defendant was not a juvenile, was competent, and had waived any claim of insanity. The district court concluded that the consecutive life sentences were appropriate and denied Defendant's motion.

{11} Defendant appeals his sentence and the district court's denial of his motion to

modify his sentence to this Court on direct appeal. This Court exercises appellate jurisdiction where life imprisonment has been imposed. *See* N.M. Const. art. VI, § 2; *see also* Rule 12-102(A)(1) NMRA (providing a right to direct appeal when a sentence of life imprisonment has been imposed).

**{12}** Defendant raises the following issues: (1) whether sentencing Defendant to two consecutive life sentences is tantamount to a life sentence without parole and is therefore cruel and unusual punishment; (2) whether felony murder is unconstitutional when applied to the severely mentally ill; and (3) whether due process demands heightened protections for the mentally ill. The State responds that Defendant's sentence is proportional to the crimes committed, and does not violate the prohibition against cruel and unusual punishment.

## II. STANDARD OF REVIEW

**{13}** Constitutional questions, such as cruel and unusual punishment, are reviewed de novo. *See State v. DeGraff*, 2006-NMSC-011, ¶ 6, 139 N.M. 211, 131 P.3d 61 (citation omitted). Sentencing is "reviewed for abuse of discretion." *State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491 (citations omitted).

## III. DISCUSSION

**{14}** Before we reach the merits of Defendant's arguments we first address the

State's argument that Defendant waived his right to an appeal. We have held that a defendant's plea agreement "does not waive an appeal on the grounds that the district court was without authority to impose an illegal sentence." *State v. Tafoya*, 2010-NMSC-019, ¶ 7, 148 N.M. 391, 237 P.3d 693. For this reason we proceed to consider Defendant's appeal.

**A.      Defendant Fails to Establish a Claim of Cruel and Unusual Punishment**

{15}      Defendant argues that his two consecutive life sentences are excessive because they are tantamount to a sentence of life imprisonment without parole or a death sentence since he will not be eligible for parole until he turns eighty-one years old. Defendant's position is that like juveniles and the mentally retarded, he lacked the mens rea to commit the crimes and thus sentencing him to life imprisonment violates state and federal prohibitions against cruel and unusual punishment.

**1.      Defendant was Properly Sentenced Notwithstanding His Mental Illness and Age**

{16}      Defendant has not challenged the final competency determination. *See State v. Herrera,* 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d 22 ("The standard to determine competency to enter a guilty plea is the same as the standard to determine competency to stand trial." (citation omitted)). Defendant also has not challenged the validity of the guilty plea. Nor has Defendant claimed that the district court did not

8

otherwise comply with the rules of criminal procedure in accepting Defendant's guilty plea. Nevertheless, Defendant argues that two cases from the United States Supreme Court compel us to conclude that the sentence to which he agreed is cruel and unusual: *Atkins v. Virginia*, 536 U.S. 304 (2002) and *Roper v. Simmons*, 543 U.S. 551 (2005).

**{17}** First, Defendant argues that we should extend *Atkins*, 536 U.S. at 321, in which the Supreme Court held that execution of a person who is mentally retarded is cruel and unusual punishment, to include people who are mentally ill, though not mentally retarded, and have been sentenced to life imprisonment and not death. In New Mexico, mental retardation is defined as "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior." NMSA 1978, § 31-9-1.6(E) (1999). A mental disorder is defined as the "substantial disorder of a person's emotional processes, thought or cognition that grossly impairs judgment, behavior or capacity to recognize reality, but does not mean developmental disabilit[ies]". NMSA 1978, § 43-1-3(O) (2013). In *State v. Trujillo*, 2009-NMSC-012, ¶¶ 35-39, 146 N.M. 14, 206 P.3d 125, we discussed the difference between mental retardation and mental illness. We observed that "[m]ental retardation is not a mental illness." *Id.* ¶ 35 (citation omitted). "While [m]entally ill people

9

encounter disturbances in their thought processes and emotions[,] mentally retarded people have limited abilities to learn." *Id.* (alterations in original) (internal quotation marks and citation omitted). "Another distinction is that mental retardation is largely immutable while mental illness is often episodic." *Id.* (citation omitted). "The practical significance of the permanence of mental retardation is that defendants incompetent due to mental retardation are less likely to be treated to competency than those incompetent due to mental illness, though there are cases where those with mild mental retardation may be treated to competency." *Id.*

{18} What psychiatrists may consider a mental illness for the purpose of a clinical diagnosis or treatment is not the same as mental retardation for determining criminal responsibility. We reject Defendant's attempt to conflate the two. *See, e.g., State v. Neely I*, 1991-NMSC-087, ¶¶ 24-26, 112 N.M. 702, 819 P.2d 249 (holding that despite a mental illness, it is not cruel and unusual to impose a life sentence for first-degree murder on a criminally responsible defendant under either state or federal constitutional analysis); *State v. Escamilla,* 1988-NMSC-066, ¶ 12, 107 N.M. 510, 760 P.2d 1276 (holding that mandatory life sentence upon a conviction of first- degree murder was not disproportionate or cruel and unusual punishment).

{19} Similarly, an inmate's need for extraordinary medical treatment does not, by

10

itself, mean that incarceration constitutes cruel and unusual punishment. *See, e.g., State v. Mabry*, 1981-NMSC-067, ¶¶ 21-22, 96 N.M. 317, 630 P.2d 269 (holding that mandatory life sentence for a conviction of first-degree murder was not cruel and unusual punishment merely because the defendant was seriously mentally ill); *State v. Vasquez*, 2010-NMCA-041, ¶¶ 40-41, 148 N.M. 202, 232 P.3d 438 (holding that the defendant's sentence was not "unjust and unwarranted" despite her need for specific treatment for battered spouse syndrome); *State v. Augustus*, 1981-NMCA-118, ¶¶ 8-11, 97 N.M. 100, 637 P.2d 50 (holding that sentence was not cruel and unusual punishment despite the defendant's need for specialized medical treatment).

{20}    In this case, Defendant has never claimed that he is mentally retarded; nor could he on this record. Defendant's prior incompetence and current mental illness are not the equivalent of mental retardation and therefore do not entitle him to a modification of his sentence. *Compare* § 31-9-1.6(B), (D) ("If the court finds . . . that the defendant has mental retardation and that there is not a substantial probability that the defendant will become competent to proceed . . . [t]he criminal charges shall be dismissed without prejudice."), *with* NMSA 1978, § 31-9-1.2(B) (1999) ("[T]he district court may commit the [incompetent and dangerous] defendant . . . for treatment to attain competency to proceed in a criminal case."). Even if Defendant's mental illness might

11

require ongoing treatment, this does not, by itself, mean that incarcerating him for two consecutive life sentences constitutes cruel and unusual punishment.

{21} Defendant's second position is that like juveniles, he lacked the mens rea to commit the crimes and thus sentencing him to life imprisonment is in violation of prohibitions against cruel and unusual punishment. He argues that we should extend *Roper*, 543 U.S. at 568, in which the Supreme Court held that it is cruel and unusual punishment to execute criminal defendants who were under eighteen years old when they committed the crime, to include young adults sentenced to life imprisonment. The holding in *Roper* explicitly applied to juveniles under eighteen. *See Roper*, 543 U.S. at 568 ("A majority of States have rejected the imposition of the death penalty on juvenile offenders under 18, and we now hold this is required by the Eighth Amendment."). In the same way Defendant asks us to compare him to a juvenile offender, the Supreme Court compared juvenile offenders between sixteen and eighteen years of age, who at the time were eligible for the death penalty. *See id.* at 570. The Supreme Court extended the Eighth Amendment prohibitions to offenders between the ages of sixteen and eighteen because of common characteristics between the two groups evidencing "diminished culpability." *Id.* at 570-1. For example, the Court stated "[i]n recognition of the comparative immaturity and irresponsibility of

12

juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent." *Id.* at 569 (citations omitted).

{22} We see no reason to extend *Roper* to Defendant's case. Defendant was twenty-one years old at the time he committed these murders and certainly not within the parameters established by *Roper*. Because Defendant was a legal adult, we cannot categorically treat him as a juvenile offender under *Roper*. Nor can we agree that his consecutive life sentence should be equated with a death sentence and therefore afford Defendant the same protections afforded to the narrow category of death row defendants. *See Roper*, 543 U.S. at 568 ("Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force." (citation omitted)). Accordingly, we decline to grant relief on this basis.

{23} While acknowledging that he neither meets the standards for mental retardation nor is of an age young enough to receive heightened protection in New Mexico, Defendant seems to ask us to find that he is close enough, and should receive some, if not all, of the protections afforded to these vulnerable groups. Because mental retardation and mental illness are distinct, Defendant's sentence is not cruel and unusual punishment prohibited by the Eighth Amendment as stated in *Atkins* on the

13

basis of Defendant's mental illness.

**2.      Defendant's Sentence Is Proportional to His Crimes**

{24}      The State argues that Defendant's sentence is proportional to the crimes he committed. *See generally Solem v. Helm*, 463 U.S. 277, 284 (1983) (stating that the Eighth Amendment prohibits "sentences that are disproportionate to the crime committed"). Ordinarily, the "length of the sentence actually imposed is purely a matter of legislative prerogative," unless the statutory sentence is "grossly disproportionate to the crime." *State v. Archibeque*, 1981-NMSC-010, ¶ 4, 95 N.M. 411, 622 P.2d 1031 (citation omitted); *see also State v. Bernal*, 2006-NMSC-050, ¶ 29, 140 N.M. 644, 146 P.3d 289 ("[W]e generally defer to the judgment of the legislature regarding the appropriate length of sentences." (citation omitted)).

{25}      "[I]t is within the province of the judiciary to review whether a sentence constitutes cruel and unusual punishment." *State v. Trujillo,* 2002-NMSC-005, ¶ 65, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). And "[i]t is rare that a term of incarceration, which has been authorized by the Legislature, will be found to be excessively long or inherently cruel." *Id.* ¶ 66 (internal quotation marks and citation omitted); *see also State v. Rueda*, 1999-NMCA-033, ¶ 14, 126 N.M. 738, 975 P.2d 351 ("Federal and state jurisprudence recognize that successful

14

challenges to the proportionality of particular sentences are, nonetheless, exceedingly rare." (internal quotation marks and citations omitted)).

{26} In fact, this Court has specifically declined to find a life sentence cruel and unusual for first-degree murder. *See, e.g., Trujillo*, 2002-NMSC-005, ¶¶ 65-66 (concluding that thirty-year life sentence statutorily authorized and imposed on a serious youthful offender for the crime of first-degree murder was not cruel and unusual); *Escamilla,* 1988-NMSC-066, ¶ 12 ("We find no disproportionality. Intentional murder warrants the harshest of penalties, and thirty years is mandated uniformly in first-degree murder cases where death is not imposed. . . . It is uncontested that this mandatory sentence is not disproportionately harsh when compared to those in other states." (citation omitted)); *State v. Padilla*, 1973-NMSC-049, ¶¶ 12-17, 85 N.M. 140, 509 P.2d 1335 (holding that two consecutive life sentences for murder and for act of carnal knowledge of child, plus imprisonment for up to twenty years for kidnapping, were not excessively long or inherently cruel and therefore did not violate the state or federal constitutions).

{27} Defendant has offered no compelling reason for why this Court should depart from a long-standing policy of judicial deference to legislative pronouncements of punishment. *See Archibeque*, 1981-NMSC-010, ¶ 5 ("Absent a compelling

15

reason . . . the judiciary should not impose its own views concerning the appropriate punishment for crimes." (citations omitted)). Nor do we have any evidence suggesting Defendant's case is of the exceedingly rare kind that requires a departure from precedent. Therefore, we agree with the State that Defendant's punishment is proportionate.

**{28}** We will not treat the life sentences in this case as categorically the same as a life sentence without the possibility of release or parole, a sentence which the district court had the ability to impose but did not. Nor will we categorically treat Defendant as someone who is mentally retarded or a juvenile, or was sentenced to death. Defendant's sentence is not otherwise excessive or disproportionate simply because it may or may not extend beyond his natural life expectancy. Accordingly, Defendant's sentence does not violate prohibitions against cruel and unusual punishment.

**B.      Defendant Fails to Establish that New Mexico's Felony Murder Statute is Unconstitutional When Applied to the Severely Mentally Ill**

**{29}** Defendant first argues generally that the felony murder statute in New Mexico, NMSA 1978, § 30-2-l(A)(2) (1994), at least as it pertains to the severely mentally ill, is unconstitutional. Defendant offers no authority to support his theory that the severely mentally ill are entitled to additional protections "because they cannot

16

understand or appreciate the magnitude, nature and consequences of risks." We therefore assume there is none. *See, e.g., State v. Torrez,* 2013-NMSC-034, ¶ 34, 305 P.3d 944 (declining to consider defendant's argument that the same jury instructions in the first trial must be given in a retrial because defendant did not cite to any case law supporting his argument); *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments.").

**{30}** Defendant further argues that the felony murder doctrine is an "unsupportable legal fiction" and "a form of strict liability", and therefore unconstitutional, relying on *State v. Harrison*, 1977-NMSC-038, ¶ 12, 90 N.M. 439, 564 P.2d 1321. Defendant's argument fails to consider that since *Harrison,* "[i]n concert with the general trend in America of limiting its reach, New Mexico has placed five limitations on felony murder." *Campos v. Bravo,* 2007-NMSC-021, ¶ 9, 141 N.M. 801, 161 P.3d 846 (citation omitted). One limitation is a mens rea requirement that the defendant must possess at least the intent required for second degree murder. *See State v. Ortega,* 1991-NMSC-084, ¶ 25, 112 N.M. 554, 817 P.2d 1196 ("Second degree murder, in other words, may be elevated to first-degree murder when it occurs in

17

circumstances that the legislature has determined are so serious as to merit increased punishment; but both types of killing—felony (first degree) murder and second degree murder—necessitate a culpable state of mind, ordinarily described in legal parlance as a *mens rea*.").

{31} New Mexico's felony murder doctrine is based on the idea that a "killing in the commission or attempted commission of a felony is deserving of more serious punishment than other killings in which the killer's mental state might be similar but the circumstances of the killing are not as grave." *Ortega,* 1991-NMSC-084, ¶ 33; *see also State v. Daugherty*, No. 32,829, dec. ¶ 11 (N.M. Sup. Ct. Aug. 1, 2013) (non-precedential) (citing *Ortega,* 1991-NMSC-084, ¶ 33). Specifically, in *Ortega* we stated that "felony murder *does* have a *mens rea* element, which cannot be presumed simply from the commission or attempted commission of a felony." 1991-NMSC-084, ¶ 21 (emphasis in original). And "felony murder is not such a strict-liability crime." *Id. ¶* 34. We interpreted the requisite intent to kill to include conduct that is "greatly dangerous to the lives of others or with knowledge that the act creates a strong probability of death or great bodily harm." *Id.* ¶ 35. As we stated, the "felony-murder statute . . . is a valid exercise of the legislature's authority to prescribe serious punishment for killings committed with the requisite criminal intent" during the

18

commission of a first-degree or inherently dangerous felony. *Id.*

{32} In this case, Defendant pleaded guilty to one count of felony murder, for murdering a victim that he also raped. Defendant does not challenge the validity of the guilty plea or evidence of his intent to kill. Nor does the record before us support such a claim. *See Herrera*, 2001-NMCA-073, ¶ 31 ("The standard to determine competency to enter a guilty plea is the same as the standard to determine competency to stand trial." (citation omitted)). Accordingly, the imposition of two consecutive life sentences for two convictions of first -degree murder in this case is constitutional.

**C. Defendant Received the Heightened Due Process Protections to Which He Was Due**

{33} Defendant asserts generally that federal and state due process guarantees provide greater protections to the mentally ill, but fails to develop any argument or to cite any specific examples of the additional protections he required. Defendant is correct that New Mexico law provides additional protections for incompetent and mentally retarded defendants. *See* § 31-9-1.2 (allowing the trial court to treat mentally ill defendants differently); § 31-9-1.6 (allowing the trial court to impose a civil rather than criminal sentence for a person meeting the definition of mentally retarded). And Defendant in fact benefited from New Mexico's heightened protections: the proceedings in his case were stayed for him to be treated to competency. And while

19

he had "adjusted to th[e] environment" of the general population at the prison in Santa Rosa, the inpatient psychiatric unit at the prison in Los Lunas is capable of caring for him should the need arise. To argue for even further protections, Defendant had to "assert at trial that the state constitution should be interpreted more broadly and provide reasons for the requested departure." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 11, 130 N.M. 386, 25 P.3d 225 (citation omitted). Because he did not do so and because he does not argue on appeal how the New Mexico Constitution is different from the United States Constitution, we will not consider his argument. *See State v. Ortega*, 2014-NMSC-017, ¶ 59, 327 P.3d 1076 (citing *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citation omitted))); *Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

**IV.    CONCLUSION**

{34}    The district court's imposition of two consecutive life sentences did not violate the prohibition against cruel and unusual punishment. The felony murder statute is constitutional when applied to the mentally ill. Accordingly, we affirm the district court's judgment and sentence, as well as its order denying modification of sentence.

{35}    **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**EDWARD L. CHAVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

_____
**JUDITH K. NAKAMURA, Justice**

21